STATE OF NORTH CAROLINA v. HENRY FRANK HAMMONDS

No 40

(Filed 14 May 1976)

1. Criminal Law § 5— test of insanity

　　The test of insanity as a defense to a criminal charge is the capacity to distinguish between right and wrong at the time of and in respect to the matter under investigation.

2. Criminal Law § 5— insanity — burden of proof

　　Defendant has the burden of proving his insanity to the satisfaction of the jury.

3. Homicide § 7— mental capacity to form intent to kill

　　If a defendant does not have the mental capacity to form an intent to kill or to premeditate and deliberate upon the killing, he cannot be lawfully convicted of murder in the first degree, whether such mental deficiency be due to disease of the mind or some other cause.

4. Criminal Law § 5; Homicide § 7— insanity as defense to murder — jury question

　　Although defendant in this first degree murder case presented opinion testimony by two psychiatrists that he was unable to distinguish right from wrong at the time of the crime as a result of mental illness and defect in reason, the question of defendant's insanity as a defense to the charge was for the jury when the testimony of two police officers that defendant appeared and acted normal immediately

1

State v. Hammonds

after the fatal shooting is considered with the presumption that every man is sane.

**5. Homicide §§ 14, 24— presumptions of malice and unlawfulness — instructions**

The trial court's instruction in a first degree murder case on the presumptions of malice and unlawfulness arising upon proof of the intentional inflicting of a wound with a deadly weapon proximately causing death did not unconstitutionally relieve the State of its burden to prove beyond a reasonable doubt each and every element of the crime charged.

**6. Criminal Law §§ 5, 112; Homicide § 28— insanity — instructions on burden of proof**

Trial court's instruction placing the burden on defendant to prove to the jury's satisfaction that he was insane when he shot deceased, and the court's refusal to give defendant's proffered instruction which would have placed the burden on the State to prove defendant's sanity beyond a reasonable doubt, did not contravene the decision of *Mullaney v. Wilbur*, 421 U.S. 684.

**7. Criminal Law §§ 5, 63; Homicide §§ 7, 28— evidence of mental disease — effect on intent — refusal to instruct**

The trial court in a first degree murder case did not err in refusing to give defendant's requested instruction that evidence of defendant's mental debilities could be considered on the question of defendant's ability to form a specific intent.

**8. Criminal Law §§ 5, 111— defense of insanity — argument of solicitor — refusal to instruct on commitment procedures for criminally insane**

Where the district attorney in his argument to the jury in a first degree murder case stated that defendant would be back in the community if found not guilty by reason of insanity, the court's instruction to the jury to disregard such argument was insufficient to cure its prejudicial effect, and the court erred in refusing to give defendant's tendered instruction explaining the statutory procedure for commitment upon an acquittal by reason of insanity.

**9. Criminal Law §§ 5, 111— defense of insanity — instructions on commitment procedure**

A defendant who interposes a defense of insanity to a criminal charge is entitled, upon request, to an instruction by the trial judge setting out in substance the commitment procedures outlined in G.S. 122-84.1, applicable to acquittal by reason of mental illness. To the extent this rule is in conflict with *State v. Bracy*, 215 N.C. 248, that decision is modified.

**10. Constitutional Law § 36; Homicide § 31— death penalty — constitutionality**

Death penalty for first degree murder does not violate the rule of *Furman v. Georgia*, 408 U.S. 238, and does not constitute cruel and unusual punishment in violation of the Eighth Amendment.

---

### State v. Hammonds

---

APPEAL by defendant pursuant to G.S. 7A-27(a) from *Rousseau, J.,* at the 8 September 1975 Criminal Session of AN-SON Superior Court.

On indictment, proper in form, defendant was charged with the murder of Herman Capel. He entered a plea of not guilty by reason of insanity. The jury returned a verdict of guilty of murder in the first degree and death sentence was imposed.

The evidence for the State tended to show the following: About 9:00 a.m. on 21 May 1975, several employees of a store operated by Herman Capel, and others who were in the store, saw defendant walking back and forth in front of the store before entering. After he entered, they heard a loud "pop," saw Mr. Capel fall, and saw defendant walk out of the store with a gun in his hand.

Detective Tommy Allen of the Wadesboro Police Department was immediately called to the store where he found Mr. Capel dead, with a gunshot wound in the head. An autopsy revealed that Mr. Capel died as a result of this wound.

When Detective Allen arrived at the police station around 10:00 a.m. on 21 May, he found defendant, who had voluntarily surrendered, waiting for him. After being fully advised of his rights, defendant was asked by Allen if he understood these rights or had any questions. Defendant said he had no questions, that he understood his rights, and that he did not want a lawyer. He then told Allen that about a month earlier he had a "run-in" with Mr. Capel about two cans of pepper that he had put in his pocket and for which Mr. Capel had accused him of not paying. He said he then paid Mr. Capel for the pepper and left the store. Defendant further stated to Allen that about a week before the shooting he overheard people talking about how Mr. Capel had caught him stealing pepper from the store, and as a result he went to see Mr. Capel and talked to him about these conversations. Mr. Capel stated that he had not told anyone about the pepper incident. Defendant told Allen, however, that this incident continued to bother him, and that he had gone to Mr. Capel's store on 21 May to talk with him but that Mr. Capel had not arrived. He left and returned about an hour later, at which time he entered the store with the gun in his hand. He saw Mr. Capel on the right side of the store talking to a man, walked straight over to where Mr. Capel was standing, stuck the gun up to the back of his head and shot him one

time. He then left the store, taking the gun with him. He told Detective Allen that he had thrown the gun out on the side of the road on 109 North and agreed to take Allen to find it. As they were leaving the station, he told Allen that the gun was not on the side of the road but was at his house. They then went to Mr. Hammond's house and at defendant's request his wife gave the gun to Allen.

Defendant did not testify but offered the testimony of two psychiatrists, his wife and several other witnesses. The testimony for the defendant and other facts necessary to decision will be discussed in the opinion.

*Attorney General Rufus L. Edmisten, Assistant Attorney General Charles M. Hensey and Assistant Attorney General Archie W. Anders for the State.*

*Larry E. Harrington and James E. Ferguson II for defendant appellant.*

MOORE, Justice.

Defendant first assigns as error the failure of the trial court to direct a verdict of not guilty by reason of insanity. Dr. Hinson, a private psychiatrist who examined defendant prior to trial, and Dr. Rollins, Director of Forensic Services at Dorothea Dix Hospital, where defendant was sent for pretrial examination, testified that in their opinions defendant, as a result of mental illness and defect in reason, was not able to distinguish right from wrong at the time of the alleged crime. Each further testified that this inability to distinguish right from wrong resulted from physical disabilities, more specifically, cerebral arteriosclerosis, presenile dementia, chronic brain syndrome and malignant hypertension. Dr. Rollins also found that on a scale of zero to five for measuring brain damage, defendant had a disability of 3.5, which he described as "moderate to severe brain damage."

Defendant presented testimony through his wife and several witnesses that he and his wife had operated a lunchroom in Wadesboro for many years. He had never been in trouble before, and his character and reputation in the community were good. This testimony further showed that for the last three months before the shooting his appearance, dress and behavior had deteriorated. Defendant's ability to manage his lunchroom and his behavior toward his customers had also deteriorated.

---

---

During this time he experienced difficulty in sleeping, and spent a large part of his time gazing blankly out the window.

Detective Tommy W. Allen, Jr., of the Wadesboro Police Department, a witness for the State, testified that he saw defendant at approximately 10:00 a.m. on 21 May 1975 at the police station in Wadesboro, he had known defendant for some six months, he appeared to be normal, what he said made sense, and that he appeared to be the same as he had been for the last six months.

Lieutenant Ed Hightower of the Wadesboro Police Department testified for the State that he had been a police officer in Wadesboro for eighteen years and had known defendant for approximately twenty-five years, having seen defendant frequently over the years. He further testified that he had seen defendant and had talked to him many times since February 1975, that he was present for approximately one hour at the time defendant gave his statement to Detective Allen on 21 May 1975, and that in his opinion defendant was normal on that day. Hightower stated that he didn't notice any difference in his condition on that day as compared with the many other occasions when he had seen and talked with him, and that he was the same Henry Hammonds he had known for a long time.

A motion for a directed verdict of not guilty has the same effect as a motion for nonsuit. *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974) ; *State v. Glover,* 270 N.C. 319, 154 S.E. 2d 305 (1967). On such motion, the evidence for the State is taken to be true, conflicts and discrepancies therein are resolved in the State's favor and the State is entitled to every reasonable inference which may be drawn therefrom. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967).

[1]  It is well settled that the test of insanity as a defense to a criminal charge is the capacity to distinguish between right and wrong at the time of and in respect to the matter under investigation. *State v. Cooper,* 286 N.C. 549, 213 S.E. 2d 305 (1975) ; *State v. Humphrey,* 283 N.C. 570, 196 S.E. 2d 516 (1973), *cert. den.,* 414 U.S. 1042, 38 L.Ed. 2d 334, 94 S.Ct. 546 (1973) ; *State v. Jones,* 278 N.C. 259, 179 S.E. 2d 433 (1971).

Testimony as to mental capacity is not confined to expert witnesses alone.

" 'Anyone who has observed another, or conversed with him, or had dealings with him, and a reasonable oppor-

tunity, based thereon, of forming an opinion, satisfactory to himself, as to the mental condition of such person, is permitted to give his opinion in evidence upon the issue of mental capacity, although the witness be not a psychiatrist or expert in mental disorders.' This has been settled doctrine in North Carolina since the pioneer case of *Clary v. Clary* [24 N.C. 78 (1841)], and under it lay opinion may be received as to the mental capacity of . . . a defendant in a criminal case. . . . " 1 Stansbury, N. C. Evidence § 127 (Brandis Rev. 1973) ; *State v. Nall*, 211 N.C. 61, 188 S.E. 637 (1936) ; *State v. Hauser,* 202 N.C. 738, 164 S.E. 114 (1932) ; *State v. Journegan,* 185 N.C. 700, 117 S.E. 27 (1923).

[2]    Defendant has the burden of proving that he was insane. However, unlike the State, which must prove defendant's guilt beyond a reasonable doubt, defendant must only prove his insanity to the satisfaction of the jury. *State v. Caddell*, 287 N.C. 266, 215 S.E. 2d 348 (1975) ; *State v. Cooper, supra; State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969), *rev'd as to death penalty,* 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2283 (1971). In *State v. Swink,* 229 N.C. 123, 47 S.E. 2d 852 (1948), Justice Ervin, speaking for this Court, said:

> "Since soundness of mind is the natural and normal condition of men, everyone is presumed to be sane until the contrary is made to appear. This presumption of sanity applies to persons charged with crime, but it is rebuttable. [Citations omitted.] These considerations give rise to the firmly established rule that the burden of proof upon a plea of insanity in a criminal case rests upon the accused who sets it up. But he is not obliged to establish such plea beyond a reasonable doubt. He is merely required to prove his insanity to the satisfaction of the jury. [Citations omitted.]"

[3]    In order to convict a defendant of murder in the first degree, when the killing was not perpetrated by one of the means specified by G.S. 14-17 and was not committed in the perpetration of or attempt to perpetrate a felony, the State must prove beyond a reasonable doubt that the killing was with premeditation and deliberation. G.S. 14-17; 4 Strong, N. C. Index 2d, Homicide § 4, and cases cited therein. It is well established that a specific intent to kill is a necessary ingredient of premeditation and deliberation. *State v. Cooper, supra; State v.*

*Baldwin,* 276 N.C. 690, 174 S.E. 2d 526 (1970) ; *State v. Robbins,* 275 N.C. 537, 169 S.E. 2d 858 (1969). If a defendant does not have the mental capacity to form an intent to kill or to premeditate and deliberate upon the killing, he cannot be lawfully convicted of murder in the first degree, whether such mental deficiency be due to disease of the mind or some other cause. *State v. Cooper, supra.*

[4] The basis for defendant's motion for a directed verdict of not guilty was that at the time the alleged offense was committed the defendant was insane and therefore not criminally responsible. Obviously, the evidence was sufficient otherwise to require that the charge of murder in the first degree be submitted to the jury. Considering the testimony of the police officers concerning defendant's condition immediately after the fatal shooting, together with the presumption that every man is sane, we hold that the question of defendant's insanity as a defense to the charge was for the jury under proper instructions by the court. The motion for a directed verdict of not guilty was properly overruled.

By Assignments of Error Nos. VIII, IX and XXI, defendant assigns as error the failure of the trial court to impose upon the State the burden of proving each and every element of the offense, including malice and the sanity of the defendant, and his refusal to instruct the jury that evidence of defendant's mental condition could be considered on the question of the required *mens rea.* Defendant contends that the court's instruction to the jury contravenes the decision of the Supreme Court of the United States in *Mullaney v. Wilbur,* 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975).

[5] In present case, the jury was instructed:

"[I]f the State proves beyond a reasonable doubt that the defendant intentionally killed Herman Capel with a deadly weapon, or intentionally inflicted a wound upon Mr. Capel with a deadly weapon that proximately caused his death, then if no other evidence is presented, the law raises two presumptions, first, that the killing was unlawful, and second, that it was done with malice.

"Now, second degree murder differs from first degree murder in that neither specific intent to kill, premeditation, nor deliberation is necessary. In order for you to find

the defendant guilty of second degree murder, the State must prove beyond a reasonable doubt that the defendant intentionally shot Mr. Capel with a deadly weapon thereby proximately causing his death, then nothing else appearing, the defendant would be guilty of second degree murder."

Substantially similar instructions have been approved by many decisions of this Court. *State v. Williams,* 288 N.C. 680, 220 S.E. 2d 558 (1975); *State v. Rummage,* 280 N.C. 51, 185 S.E. 2d 221 (1971); *State v. Wrenn,* 279 N.C. 676, 185 S.E. 2d 129 (1971). In *State v. Williams, supra,* Justice Branch, speaking for the Court, stated:

"The identical question presented by this assignment of error was before us in *State v. Sparks,* 285 N.C. 631, 207 S.E. 2d 712 (decided 30 August 1974), *petition for cert. filed,* 43 U.S.L.W. 3392 (U.S. Nov. 29, 1974) (No. 669), and this Court unanimously rejected defendant's contention that presumptions of malice and unlawfulness arising from the State's proof that the deceased's death was proximately caused by the defendant's intentional use of a deadly weapon were constitutionally impermissible. However, defendant strongly urges that the rule approved in *Sparks* has been overruled by *Mullaney v. Wilbur, supra.* We do not agree.

". . . We find nothing in *Mullaney* which declares that due process is violated by a rule which allows rational and natural presumptions or inferences to arise when certain facts are proved beyond a reasonable doubt by the State.

"We hold that the challenged charge did not unconstitutionally relieve the State of its burden to prove beyond a reasonable doubt each and every element of the crime charged."

It should be noted that the trial court in the present case first instructed the jury that insanity is a complete defense to the charge of murder, and then charged that in order to convict defendant of first degree murder the State must prove five things beyond a reasonable doubt, the first one being "that the defendant intentionally and without justification or excuse *and with malice* shot Mr. Capel with a deadly weapon." In the final mandate to the jury, the Court stated:

". . . I charge that if you find from the evidence beyond a reasonable doubt that on or about May 21, 1975 the defendant intentionally and without justification or excuse shot Herman Capel with a deadly weapon thereby proximately causing Mr. Capel's death, and that the defendant intended to kill Mr. Capel, and that he acted with malice and with premeditation and deliberation, it would be your duty, nothing else appearing, to return a verdict of guilty of first degree murder. However, if you do not so find or have a reasonable doubt as to one or more of those things, you will not return a verdict of guilty of first degree murder."

[6] Under these same assignments, defendant contends the trial court erred when it placed the burden of proof on defendant to prove to the jury's satisfaction that he was insane when he shot the deceased, and further erred when it refused to give defendant's proffered instruction that would have placed the burden on the State to prove defendant's sanity beyond a reasonable doubt. Defendant admits that this Court recently reaffirmed this allocation of the burden of proof on the issue of insanity. *See State v. Caddell, supra.* However, defendant contends that the holding of the United States Supreme Court in the intervening case of *Mullaney v. Wilbur, supra,* requires a reexamination of our decision in *Caddell.* We did reexamine this holding in *State v. Shepherd,* 288 N.C. 346, 218 S.E. 2d 176 (1975). In that case, the defendant assigned as error the trial court's denial of his motion for nonsuit as to first degree murder, based primarily on defendant's claim that at the time of the killing the defendant was insane, and that the State had failed to prove beyond a reasonable doubt that the killing was with premeditation and deliberation. In *Shepherd,* we stated: "*Mullaney* was not based on a plea of insanity and is no authority for these assignments of error." The two concurring opinions in *Mullaney* support this statement. These noted that the cases which placed the burden of proof of insanity on the defendant were not overruled by *Mullaney.* Specifically, Mr. Justice Rehnquist, who was joined by the Chief Justice in his concurring opinion, stated:

"I agree with the Court that *In re Winship,* 397 U.S. 358, 25 L.Ed. 2d 368, 90 S.Ct. 1068 (1970), does require that the prosecution prove beyond a reasonable doubt every element which constitutes the crime charged against a

defendant. I see no inconsistency between that holding and the holding of *Leland v. Oregon,* 343 U.S. 790, 96 L.Ed. 1302, 72 S.Ct. 1002 (1952). In the latter case this Court held that there was no constitutional requirement that the State shoulder the burden of proving the sanity of the defendant."

[7] In present case, the trial court placed the burden upon the State to prove beyond a reasonable doubt all the essential elements of murder in the first degree. Defendant, however, further contends that the court erred in its refusal to give his requested instruction that the evidence of defendant's mental debilities could be considered on the question of defendant's ability to form the specific intent, which intent is an element of first degree murder. Defendant cites and relies heavily upon *State v. Propst,* 274 N.C. 62, 161 S.E. 2d 560 (1968). In that case there was evidence concerning defendant's intoxication. Justice Bobbitt (later Chief Justice), speaking for the Court, stated:

"In our view, the evidence as to defendant's intoxication is insufficient to support a finding that he was so drunk that he was *utterly unable* to form an actual, specific intent to kill, after premeditation and deliberation, and was insufficient to support a finding that defendant was *utterly unable* to form a specific intent to shoot Taylor. Even so, when considered in connection with the testimony referred to in the preceding paragraph, and in connection with the testimony as to defendant's mental status and nervous condition, we think the testimony relating to his intoxication was competent *for consideration* as bearing upon whether the State had satisfied the jury from the evidence beyond a reasonable doubt that defendant had unlawfully killed Taylor in the execution of *an actual, specific intent to kill, formed after premeditation and deliberation,* and for consideration as bearing upon whether the State has satisfied the jury from the evidence beyond a reasonable doubt that defendant *intentionally* shot Taylor and thereby proximately caused his death. In our view, the court, in charging the jury, should have referred to the evidence relating to defendant's intoxication and should have given instructions as to how it should be considered."

Defendant recognizes that this Court in *State v. Cooper, supra,* specifically refused to extend the *Propst* holding to a case in-

volving evidence of insanity rather than intoxication. We adhere to the *Cooper* decision. These assignments of error are overruled.

[8]   During his final argument to the jury, the district attorney made the following remarks:

> ". . . In this case they are saying back yonder when this offense is alleged to have been committed he didn't know right from wrong. I hope you understand fully the difference. See, that is a totally separate defense of insanity, and if you conclude he is not guilty, that is, by way of finding that he didn't know right from wrong back then, he walks out of this courtroom not guilty, returned to this community."

Upon objection by defense counsel, the district attorney first defended his remarks as proper but then withdrew them and asked the court to tell the jury not to consider them. The court then instructed the jury: "Disregard the last remark, ladies and gentlemen, about returning to the community."

After the closing arguments of counsel, and before the charge of the court, defendant submitted to the court a proposed instruction explaining the statutory procedure for commitment upon an acquittal by reason of insanity. Defendant excepted to the trial court's refusal to give this instruction.

Defendant contends that the effect of the district attorney's remarks about defendant's possible return to the community was so prejudicial that the instruction given by the court did not suffice, and that the court at that time should have gone further and explained to the jury what would happen to defendant if acquitted by reason of insanity. Having failed to do this, defendant further contends the court should have given the instruction proposed by defendant. We agree.

In *State v. Rhodes*, 275 N.C. 584, 169 S.E. 2d 846 (1969), this Court held that as a general rule the judge should not inform the jury in "noncapital cases" of the quantum of punishment a verdict would allow him to impose. Following the decisions of *Furman v. Georgia*, 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972), and *State v. Waddell*, 282 N.C. 431, 194 S.E. 2d 19 (1973), the jury may no longer recommend life imprisonment for a capital crime which now carries a mandatory death sentence. Therefore, the amount of punishment ap-

plicable to a verdict of guilty was held of no concern to jurors in *capital* cases also. *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974); *State v. Watkins,* 283 N.C. 504, 196 S.E. 2d 750 (1973).

The General Assembly has modified the general rule by the enactment of G.S. 15-176.3 through G.S. 15-176.5. In capital cases, these statutes (1) permit advising prospective jurors on the consequences of a verdict of guilty, (2) require, upon request, an instruction to the jury that the death penalty will be imposed upon the rendering of such a verdict, and (3) permit either party to indicate in its argument to the jury the consequences of a verdict of guilty.

This Court, moreover, has recognized exceptions to the general rule that the jury remain ignorant of the punishment their verdict may allow. In *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974), we stated:

". . . However, we recognize that in a capital case, there may be a 'compelling reason which makes disclosure as to punishment necessary in order "to keep the trial on an even keel" and to insure complete fairness to all parties. . . .' *State v. Rhodes, supra.* Thus in a capital case if the jury appears to be *confused* or *uncertain,* the trial judge should act to alleviate such uncertainty or confusion. . . ." (Emphasis added.)

The case before us is not specifically concerned with whether the jury should be told what punishment will follow a verdict of guilty, rather, it is concerned with the disposition that will follow a verdict of not guilty by reason of insanity. On this issue, we are confronted with the case of *State v. Bracy,* 215 N.C. 248, 1 S.E. 2d 891 (1939), in which this Court held that when a defendant is charged with a capital crime and interposes the defense of insanity, he is not entitled to have the jury know the provisions of the commitment laws applicable upon acquittal by reason of insanity. In that case, the solicitor argued to the jury that the defendant would go free if the jury returned a verdict of not guilty by reason of insanity. Defense counsel argued that if acquitted on that ground defendant would not go free but would be committed to the State Prison's department for the criminally insane. Defense counsel then read and explained the applicable commitment statutes to the jury. No objection was made to either argument. The

judge was then requested by defendant to explain these commitment statutes to the jury. He refused and we affirmed. In *Bracy,* however, defense counsel, without objection, read and explained these statutes to the jury. The jury was thus fully aware of the disposition to be made of defendant if acquitted by reason of insanity. To that extent, *Bracy* is distinguishable from the case at bar.

Here, the fate of defendant, should he be acquitted by reason of insanity, became a central and confusing issue in the arguments of counsel. Defense counsel attempted to argue that defendant was a sick old man who belonged somewhere other than in a penal institution. The district attorney objected to this argument and the jury was instructed by the trial judge that they were not to speculate as to what would happen to defendant. Then, the district attorney in the final argument to the jury told them that defendant would be back in the community if found not guilty by reason of insanity. The judge instructed the jury to disregard this remark. We do not believe this was sufficient, however, to overcome the idea planted in the minds of the jurors that if defendant were found not guilty he would return to the community, perhaps to kill again. Further evidence of the jury's confusion on this issue is seen by the jury's return to the courtroom after their deliberations had begun to inquire whether they might make a recommendation for mercy when they returned their verdict. Had they been informed by the trial judge that if they returned a verdict of not guilty by reason of insanity that defendant would be treated as provided by law in such cases, the jury might well have been more inclined to return a verdict of not guilty.

Several other states have considered the question of what a judge should tell the jury concerning a verdict of not guilty by reason of insanity. *See generally* Annot., 11 A.L.R. 3d 737 (1967), Instructions in Criminal Case in Which Defendant Pleads Insanity as to his Hospital Confinement in the Event of Acquittal. In a case similar to ours, *Dipert v. State,* 286 N.E. 2d 405 (Ind. 1972), the Indiana Supreme Court held that the trial judge should have granted defendant's request for an instruction on the applicable commitment statutes where the district attorney in his argument to the jury had stated that defendant would go "scot free" if found not guilty by reason of insanity. The court stated that normally the jury is not entitled to know what post-trial procedures defendant will face

when acquitted by reason of insanity. However, where an erroneous view of the law had been planted in their minds by the argument of the district attorney, such an instruction was necessary for the protection of the defendant.

Several jurisdictions have gone further and required an instruction on commitment procedures whenever defendant presents the defense of insanity and requests such an instruction. The District of Columbia Circuit in a series of decisions, beginning with *Lyles v. United States*, 254 F. 2d 725 (D.C. Cir. 1957), *cert. den.*, 356 U.S. 961, 2 L.Ed. 2d 1067, 78 S.Ct. 997 (1958), has held that a defendant who relies on an insanity defense is entitled to the instruction unless it affirmatively appears that defendant does *not* want such an instruction. *See also McDonald v. United States*, 312 F. 2d 847 (D.C. Cir. 1962). The rationale of these decisions rests on the presumption that although the jury understands that a verdict of guilty means the defendant will be punished by a prison sentence or fine, and that a verdict of not guilty means the defendant will go free, the average jury does not know what a verdict of not guilty by reason of insanity will mean to the defendant. This uncertainty may lead the jury to convict the accused in a mistaken belief that he will be set free if an insanity verdict is returned. One state, Kansas, also requires by statute the instruction be given even without request by defendant. *See State v. Hamilton*, 216 Kan. 559, 534 P. 2d 226 (1975).

At least five other states have adopted the rule that *upon request* a defendant who is relying on the defense of insanity is entitled to an instruction on commitment procedures. *Kuk v. State*, 80 Nev. 291, 392 P. 2d 630 (1964); *People v. Cole*, 382 Mich. 695, 172 N.W. 2d 354 (1969); *Schade v. State*, 512 P. 2d 907 (Alaska 1973); *State v. Babin*, 319 So. 2d 367 (La. 1975); *Commonwealth v. Mutina*, 323 N.E. 2d 294 (Mass. 1975). In *Commonwealth v. Mutina, supra*, the court set out at length why it followed the reasoning of *Lyles v. United States, supra*, and other cases requiring the instruction. The court recognized, as have several of the other decisions cited above, that the choice lies between (1) a possible miscarriage of justice resulting from the conviction of an accused by a jury fearful for the safety of the community and ignorant of post-trial commitment procedures and (2) a possible invitation to the jury to engage in result-oriented verdicts, thereby deviating

from their task of deciding guilt or innocence. The court elected to avoid the possibility of a miscarriage of justice.

We find the reasoning of these cases persuasive. To allow a jury to speculate on the fate of an accused if found insane at the time of the crime only heightens the possibility that the jurors will fall prey to their emotions and thereby return a verdict of guilty which will insure that defendant will be incarcerated for his own safety and the safety of the community at large. In the case before us, there could be no doubt in the jurors' minds that defendant murdered Mr. Capel. There was considerable evidence that defendant was incapable of knowing right from wrong at the time he killed Mr. Capel, and also evidence that his mental condition would worsen with age. The jury's questions on a recommendation of mercy indicate their sympathy for defendant's condition. However, an overriding fear for the safety of the community could well have dictated their verdict in the absence of any information that defendant could be committed to a mental hospital if found not guilty by reason of insanity. The atmosphere was one of confusion and of uncertainty. To insure fairness to defendant and to get the trial back "on an even keel," the trial judge, upon request by defendant, should have instructed the jury on the consequences of a verdict of not guilty by reason of insanity.

[9] We hold, therefore, that, upon request, a defendant who interposes a defense of insanity to a criminal charge is entitled to an instruction by the trial judge setting out in substance the commitment procedures outlined in G.S. 122-84.1, applicable to acquittal by reason of mental illness. The failure to give such instruction in this case was prejudicial error, entitling defendant to a new trial. To the extent this opinion is in conflict with State v. Bracy, supra, that decision is modified. On retrial, in the absence of a judicial admission that defendant committed the homicide, it would be appropriate to submit as the first issue an issue worded substantially as follows: "Did the defendant kill the deceased?" The burden of proof rests upon the State to establish beyond a reasonable doubt the affirmative of such issue. A negative answer would end the case. If answered in the affirmative, the jury would consider a second issue worded substantially as follows: "If so, was defendant insane when the killing occurred?" Upon this issue, the defendant would have the burden of proving to the satisfaction of the jury that this issue should be answered "Yes." An affirmative

answer to this issue would end the case. If answered in the negative, instructions appropriate to a prosecution in which insanity is not pleaded as a complete defense would be applicable.

[10]    By his Assignment of Error No. XXIII, defendant contends that the death sentence is illegal and unconstitutional for the reasons that capital punishment in North Carolina is still imposed in a selective and arbitrary manner that violates the rule of *Furman v. Georgia, supra,* and the imposition of capital punishment is excessively and unnecessarily cruel in light of contemporary standards of decency and dignity enshrined in the Eighth Amendment. These contentions have been considered and rejected by this Court in many cases in recent years. Further discussion would be merely repetitious. *See State v. Bush,* 289 N.C. 159, 221 S.E. 2d 333 (1976), and cases therein cited.

Other assignments of error relating to the motion for a continuance, further medical examination of defendant, and the selection of the jury, present questions which probably will not recur at another trial. Discussion thereof is unnecessary and inappropriate at this time.

For the reasons stated above, defendant is entitled to a new trial and it is so ordered.

New trial.