STATE v. COPPAGE

[94 N.C. App. 630 (1989)]

———————

STATE OF NORTH CAROLINA v. WALTER COPPAGE

No. 8826SC795

(Filed 18 July 1989)

**1. Criminal Law § 112.6 — request for instructions on involuntary commitment—withdrawal not coerced by mistaken ruling of trial court**

Defendant's withdrawal of his request for instructions on involuntary commitment was voluntary and not improperly coerced by a mistaken ruling of the trial court where the trial court initially agreed to give defendant's requested instructions; the court also indicated that the district attorney could argue that involuntary commitment would continue subject to periodic review until, after a full evidentiary hearing,

the Chief of Medical Services determined that defendant was not in need of hospitalization; the trial court stated that he would allow the district attorney to argue that defendant's doctor had testified that any condition from which defendant was suffering at the time of the crimes was in remission and he was no longer a sick man; and these arguments which the court was prepared to allow were consistent with the proposed instructions, the procedures of the involuntary commitment statutes, and earlier holdings of the courts.

**2. Criminal Law § 5.1— insanity—issue properly submitted to jury**

There was no merit to defendant's argument that there was uncontradicted evidence of his insanity and the trial court was therefore required to dismiss the charges, since the State offered evidence that defendant ran from the scene of the crime once he was discovered by police; this was some evidence that defendant possessed the presence of mind to flee; and this evidence, coupled with the presumption of sanity and defendant's burden of proof, made the issue of insanity one which the court was justified in submitting to the jury.

**3. Criminal Law § 102.6— psychiatrist's opinion of defendant's sanity—questions raised in prosecutor's jury argument**

The district attorney's argument which raised questions about the opinions of a psychiatrist as to defendant's sanity was not grossly improper or clearly calculated to prejudice the jury in its deliberations, and the trial court therefore was not required to intervene *ex mero motu*.

**4. Criminal Law § 112.6— instructions on insanity—burden of proof on elements of offense not shifted to defendant**

There was no merit to defendant's contention in a rape case that the trial court left the impression with the jury that it did not "need to put the State to the proof on the elements [of the crime] if it rejected the insanity defense," and that this had the effect of shifting the burden of proof as to the elements of the offense from the State to the defendant, since the trial court instructed the jury that the State was required to prove each of the elements of the offense beyond a reasonable doubt and that if the jury found the defendant committed each element of the offense beyond a reasonable doubt, it would then determine if the defendant was insane at the time the offense was committed.

APPEAL by defendant from *Kirby (Robert W.), Judge*. Judgment entered 19 January 1988 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 22 February 1989.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Lemuel W. Hinton, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Marc D. Towler, for defendant-appellant.*

GREENE, Judge.

Defendant appeals from the imposition of consecutive life sentences imposed by the trial court after the jury returned a verdict of guilty to first-degree rape and first-degree sexual offense.

The State's evidence tended to show defendant attacked the victim and had vaginal and anal intercourse with her. As a result of the assault, the victim received bruises to the face, blackened eyes, bruised eyeballs, scalp lacerations and injuries to her ears. During the assault a police car drove by the scene and defendant ran and was later apprehended underneath a house. At the time of his arrest, defendant appeared to the police officers to be "high" on drugs and his eyes were bloodshot and dilated. The defendant in statements to police denied the assault.

The defendant did not testify but offered evidence through his mother and Dr. John M. Billinsky, Jr. (hereinafter referred to as "Billinsky"). The mother testified that the defendant had had a problem with drugs and alcohol for the last eight years. Billinsky, an expert in forensic psychiatry, examined defendant on several occasions prior to the trial and after the assault. He was of the opinion that defendant, at the time of the assault, was mentally ill: suffering from "cocaine delusional syndrome," "cocaine dependence," "alcohol abuse," "marijuana abuse" and "adjustment disorder with depressed mood." Billinsky opined that defendant's mental disorders impaired "his ability to understand the nature and quality of what he was doing" and "his ability to know right from wrong in the specific act." Finally, Billinsky testified that the various disorders defendant had at the time of the assault still exist "though in a state of remission."

The trial court submitted two verdict sheets to the jury, one on sexual offense and one on rape. Both verdict sheets con-

tained the following special issue: "Did you find the defendant not guilty because you were satisfied he was insane?"

---

Defendant's appeal presents the following issues: I) whether defendant's withdrawal of his request for instructions on involuntary commitment proceedings was voluntary; II) whether the trial court erred in denying the defendant's motion to dismiss; III) whether the district attorney made improper jury arguments; and IV) whether the instructions of the trial court erroneously placed the burden of proof as to the elements of the offense on the defendant.

I

[1] During the charge conference, defendant requested the trial court give as part of the instructions on the insanity defense the following instruction:

> When a defendant charged with a crime is found not guilty by reason of insanity, the trial court, upon such additional hearing as it determines to be necessary, shall direct that there be civil proceedings to determine whether the person should be involuntarily committed. If the trial judge finds that there are reasonable grounds to believe that the defendant is mentally ill and is imminently dangerous to himself or others, and he determines upon appropriate finding of fact that it is appropriate to hold such involuntary commitment proceeding, he may order the defendant held in appropriate restraint pending those proceedings. If it is determined in those proceedings that the defendant is [mentally ill] [mentally retarded], and is dangerous to himself or others, the court will order him to be confined and treated as an inpatient at a state mental health facility. This involuntary commitment will continue, subject to periodic review, until the chief of medical services of that facility, and the court, after a full evidentiary hearing, determine that he is not in need of continued hospitalization.

After the trial court stated it would give the requested instructions, the district attorney questioned the trial court as to whether he could rebut in his jury argument any implication that the involuntary commitment proceedings would result in continuous hospitalization of the defendant. The trial court responded that the district attorney should be able to argue to the jury that the involuntary commitment proceedings:

STATE v. COPPAGE

[94 N.C. App. 630 (1989)]

．．． are for the purpose of determining if he is now mentally ill, and he is imminently dangerous to himself or others, and, if the Court determines that he is not, then there's no justification for involuntary commitment . . . . If he is those things, the Court will order him to be confined and treated as an in-patient at the State Mental Health Facility. Involuntary commitment will continue subject to periodic review until the Chief of Medical Services, after a full evidentiary hearing, determines he's not in need of continued hospitalization.

Additionally, the trial court stated that he would permit the district attorney to argue:

. . . that the doctor, himself, Dr. Billinsky, has already testified that if whatever condition he was suffering from on that occasion is now in remission at this point and he is no longer a sick man.

After some further dialogue between the district attorney, the defendant's attorney and the trial court, the defendant withdrew his request for the jury instructions related to the involuntary commitment procedure. Defendant now argues his withdrawal of the instruction was not voluntary and was only made after the trial court erroneously indicated the district attorney would be permitted, if the requested instructions were given, to argue to the jury as suggested by the trial court.

When a defendant interposes a defense of insanity and requests an instruction setting out the provisions for involuntary commitment, the trial court must instruct "on the consequences of a verdict of not guilty by reason of insanity." *State v. Hammonds*, 290 N.C. 1, 15, 224 S.E. 2d 595, 604 (1976). Specifically, the trial court must set out "*in substance* the commitment procedures outlined in [N.C.G.S. Sec. 122C-261 through 277 (1986)] applicable to acquittal by reason of mental illness." *Id.* (emphasis added); *see* N.C.G.S. Sec. 15A-1321 (1988) (when defendant found not guilty by reason of insanity, the judge initially determines whether "there are reasonable grounds to believe the defendant meets the criteria for involuntary commitment"). Failure of the trial court to instruct the jury on the consequences of a "not guilty by reason of insanity" verdict would result in speculation on the part of the jurors as to "the fate of an accused if found insane at the time of the crime" and this only "heightens the possibility that the jurors will fall prey to their emotions and thereby return a verdict of guilty which

[would] insure that defendant [would] be incarcerated for his own safety and the safety of the community at large." *Hammonds*, 290 N.C. at 15, 224 S.E. 2d at 603-604.

Our Supreme Court has not set forth a *precise instruction* that must be given on the question of involuntary commitment where the defendant makes a request for such a charge and an issue is being submitted to the jury of "not guilty by reason of insanity." *See State v. Harris*, 306 N.C. 724, 726, 295 S.E. 2d 391, 393 (1982). However, in *Harris* the Supreme Court did approve the following instruction given to the jury by the trial court:

[If you answer this issue "yes" and I then thereafter direct a verdict of not guilty because of that answer in each of these cases, I will order the defendant held in custody until such time as a hearing can be held to see whether or not he will be confined to a state hospital, at first for a period of not more than ninety days and then another hearing will be held in reference thereafter to see whether or not he will continue to be held in the State Hospital as involuntary committed mental patient from time to time.]

*Harris*, 306 N.C. at 726, 295 S.E. 2d at 392.

The instructions the trial court was prepared to give in the present case are consistent with the instructions approved in *Harris* and set out the substance of the commitment procedures of N.C.G.S. Sec. 122C-261 *et seq.* Furthermore, the argument the trial court was prepared to allow the district attorney to make to the jury was entirely consistent with the proposed instructions, the procedures of the involuntary commitment statutes and earlier holdings of this court. The involuntary commitment procedures permit commitment against the will of the defendant *only as long as* the defendant remains "mentally ill and dangerous to himself or others." N.C.G.S. Sec. 122C-268(j) (1986). Furthermore, the indication of the trial court that he would allow the district attorney to argue that Billinsky had testified that defendant's mental condition was "in remission" is consistent with the holding of *State v. Flowers*, 47 N.C. App. 457, 460-61, 267 S.E. 2d 405, 408, *disc. rev. denied*, 301 N.C. 99 (1980). In *Flowers*, where the issue of "not guilty by reason of insanity" was submitted to the jury, this court approved a district attorney's argument to the jury that the examining doctor, who testified in the trial, released the defendant from confinement before trial because defendant was not

dangerous to himself or others. *Id.* The court noted that "[n]either the district attorney nor the court said the defendant would be released if he were found not guilty" by reason of insanity. *Id.* at 461, 267 S.E. 2d at 408.

Therefore, we conclude the defendant was not forced by any erroneous ruling of the trial court to withdraw his request for instructions. *See State v. Spicer,* 285 N.C. 274, 285, 204 S.E. 2d 641, 648 (1974) ("because of his mistaken view of the law [the trial judge] exercised too much pressure to make the withdrawal of the request voluntary on the part of the defendant and his counsel"). Accordingly, the defendant's withdrawal of his request for instructions on involuntary commitment was voluntary and not improperly coerced by a mistaken ruling of the trial court. The trial court therefore committed no error in refusing to give the requested instructions.

## II

[2] The defendant next argues the trial court erred in denying his motion to dismiss all the criminal charges. Defendant's motion was based on his argument that on the issue of sanity there was uncontradicted evidence that the defendant was insane and that the trial court was therefore required to dismiss the charges. We disagree.

"The test of insanity as a defense to a criminal charge in this State is the capacity to distinguish between right and wrong at the time of and in respect to the matter under investigation." *State v. Mize,* 315 N.C. 285, 289, 337 S.E. 2d 562, 565 (1985). In North Carolina, there exists a presumption of sanity and the defendant has the burden of proving to the satisfaction of the jury "that he was insane during the commission of the crime." *Id.*

The defendant argues that when a defendant offers evidence of his insanity as he did in this case, the state is not entitled to rely on the presumption of sanity, but must instead offer some evidence of defendant's sanity in order to overcome defendant's motion for directed verdict. Our Supreme Court has held that the presumption of sanity when supported by other evidence of sanity is "sufficient to rebut defendant's evidence of insanity on a motion . . . for a directed verdict." *Mize,* 315 N.C. at 290, 337 S.E. 2d at 565-67. In so holding, the *Mize* Court did not reject the express language of an earlier Supreme Court opinion:

. . . And where the defendant offers evidence of his insanity, the state may seek to rebut it or to establish the defendant's sanity *by the presumption of law, or by the testimony of witnesses, or by both.* . . . Even if the evidence of insanity presented by the defendant is uncontradicted by the state, it is the defendant's burden to satisfy the jury of the existence of the defense. The credibility of the defense witnesses in the case was a proper matter for the jury. A diagnosis of mental illness by an expert is not in and of itself conclusive on the issue of insanity.

*State v. Leonard*, 300 N.C. 223, 235, 266 S.E. 2d 631, 638, *cert. denied*, 449 U.S. 960, 101 S.Ct. 372, 66 L.Ed. 2d 227 (1980) (quoting *State v. Leonard*, 296 N.C. 58, 64-65, 248 S.E. 2d 853, 856-57 (1978) ) (emphasis in original).

Arguably, there exists some conflict in the Supreme Court opinions, but in any event, it is abundantly clear that when the State presents evidence of sanity, a motion for a directed verdict is correctly denied when considered in addition to the presumption of sanity. The State offered evidence that defendant ran from the scene of the crime once he was discovered by the police in the commission of the crime. This evidence, which is some evidence defendant possessed a "presence of mind to flee," when "coupled with the presumption of sanity and the defendant's burden of proof, make the issue of insanity one which the court was clearly justified in submitting to the jury." *Leonard*, 296 N.C. at 65, 248 S.E. 2d at 857. Accordingly, the trial court did not err in denying the defendant's motion for a directed verdict.

### III

[3] The district attorney made the following statement to the jury in his final jury argument:

Now, this psychiatrist can put this label up on the board, you ever hear of this? I've been practicing law for fifteen years, I never heard of this. Right there. Never heard of it. He wants me to apologize for the facts of this case, and he comes in here with this stuff?

The defendant contends this argument allowed the district attorney to place before the jury incompetent and prejudicial matters and that he injected into his argument "facts of his own knowledge

or other facts not included in the evidence" (quoting *State v. Monk*, 286 N.C. 509, 515, 212 S.E. 2d 125, 131 (1975)).

As the defendant failed to object to the district attorney's remarks during the trial, the trial judge was required to intervene *ex mero motu* only if the argument was "grossly improper." *State v. Mason*, 315 N.C. 724, 734, 340 S.E. 2d 430, 437 (1986). A district attorney "may not place before the jury incompetent and prejudicial matters not admissible in evidence or include in his argument facts not included in the evidence." *State v. Taylor*, 289 N.C. 223, 226, 221 S.E. 2d 359, 362 (1976). Arguments before the jury "are largely in the control and discretion of the trial judge who must allow wide latitude in the argument of the law, the facts of the case, as well as to all reasonable inferences to be drawn from the facts." *Id.* Ordinarily, appellate courts "do not review the exercise of the trial judge's discretion in controlling jury arguments unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations." *Id.* at 227, 221 S.E. 2d at 362.

Applying these principles to the present case, we do not find the jury argument of the district attorney to be "grossly improper" or "clearly calculated to prejudice the jury in its deliberations." *Id.* The district attorney expressed no personal views or opinions and only raised questions about the opinions of the psychiatrist. Therefore, the trial court did not err by failing to intervene *ex mero motu.*

IV

[4] The defendant finally argues the trial court committed plain error in its jury instructions. After instructing the jury that in order to find the defendant guilty of first-degree rape, the court instructed that it was necessary for the State to prove beyond a reasonable doubt the four different elements of the offense. The trial judge proceeded to discuss the different elements of the offense and then instructed:

Then, members of the jury, there is evidence which tends to show that the defendant was legally insane at the time of the alleged offense. You will consider that evidence only if you find that the State has proved beyond a reasonable doubt each of the things about which I have already instructed you. Even if the State does not prove each of these things

beyond a reasonable doubt, the defendant would be, nevertheless, *not* guilty if he was legally insane at the time of the alleged offense.

(emphasis added). The trial court then proceeded to instruct on insanity and as a part of those instructions stated:

If you are not satisfied as to the insanity of the defendant, the defendant is presumed to be sane, and *you would find the defendant guilty*.

(emphasis added).

The defendant specifically argues that the instructions of the trial court left the impression with the jury that it did not "need to put the State to the proof on the elements [of the crime] if it rejected the insanity defense." The defendant contends that this had the effect of shifting the burden of proof as to the elements of the offense from the State to the defendant. We disagree.

The trial court instructed the jury that the State was required to prove each of the elements of the offense beyond a reasonable doubt and that if the jury found the defendant committed each element of the offense beyond a reasonable doubt, it would then determine if the defendant was insane at the time the offense was committed. The trial court summarized its instructions:

So, members of the jury, I charge if you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant engaged in vaginal intercourse with the victim, and that he did so by force, or threat of force, and that this is sufficient to overcome any resistance which the victim might have made, and that the victim did not consent, it was against her will, and that the defendant inflicted serious personal injury upon the victim, it will be your duty to return a verdict of guilty of first degree rape, unless you are satisfied that the defendant was insane at that time.

When the instructions are viewed in the entirety, they did not unconstitutionally shift the burden of proof from the State to the defendant. *See State v. Wade*, 49 N.C. App. 257, 262, 271 S.E. 2d 77, 80 (1980), *cert. denied*, 315 N.C. 596, 341 S.E. 2d 37 (1986) (in reviewing charge of trial court, this court must read and consider the charge as a whole). Accordingly, we find no reversible error in the jury instructions as given.

No error.

Judges EAGLES and COZORT concur.