Justice JACKSON
concurring.
Although I concur in the majority opinion, I write separately to emphasize the impropriety of the prosecutor’s jury argument discouraging a potential verdict of not guilty by reason of insanity.
In any case in which a criminal defendant pleads not guilty by reason of insanity, evidence necessarily will be presented that the defendant has mental illness and that the mental illness had a causal role in the defendant’s criminal behavior. See, e.g., State v. Jones, 293 N.C. 413, 425, 238 S.E.2d 482, 490 (1977) (“[T]he test of insanity as a defense to a criminal charge is whether the accused, at the time of the alleged act, was laboring under such a defect of reason, from disease or deficiency of the mind, as to be incapable of knowing the nature and quality of the act, or, if he does know this, was, by reason of such defect of reason, incapable of distinguishing between right and wrong in relation to such act.” (citing, inter alia, State v. Humphrey, 283 N.C. 570, 196 S.E.2d 516, cert. denied, 414 U.S. 1042 (1973))). Because the defendant has the burden of proving the affirmative defense of insanity, State v. Wetmore, 298 N.C. 743, 746-47, 259 S.E.2d 870, 873 (1979), even the defendant’s own attorney may provide evidence that the defendant’s mental illness caused him or her to engage in conduct that a jury might find shocking or reprehensible. Consequently, this Court has acknowledged that juries may feel “fear for the safety of the community” in cases involving the insanity defense. See State v. Hammonds, 290 N.C. 1, 15, 224 S.E.2d 595, 604 (1976).
*321 In Hammonds, a case decided before contemporary procedures dealing with a plea of not guilty by reason of insanity were put in place, this Court explained that “fear for the safety of the community” could motivate a jury to “insure that [a] defendant will be incarcerated for his own safety and the safety of the community at large.” Id. at 15, 224 S.E.2d at 603-04. We noted that “[t]here was considerable evidence that [the] defendant was incapable of knowing right from wrong at the time [of the crime], and also evidence that his mental condition would worsen with age.” Id. at 15, 224 S.E.2d at 603. We explained:
[Although the jury understands that a verdict of guilty means the defendant will be punished by a prison sentence or fine, and that a verdict of not guilty means the defendant will go free, the average jury does not know what a verdict of not guilty by reason of insanity will mean to the defendant. This uncertainty may lead the jury to convict the accused in a mistaken belief that he will be set . free if an insanity verdict is returned.
Id. at 14, 224 S.E.2d at 603. In Hammonds the district attorney had stated during closing arguments that a finding of not guilty by reason of insanity would result in the defendant’s “waik[ing] out of this courtroom not guilty, returned to this community.” Id. at 11, 224 S.E.2d at 601. Although the trial court sustained the defendant’s objection to the State’s argument, the court refused the defendant’s request for an instruction explaining the statutory procedure for commitment following a verdict of not guilty by reason of insanity. Id. at 11, 224 S.E.2d at 601. We concluded that “the fate of [the] defendant, should he be acquitted by reason of insanity, became a central and confusing issue in the arguments of counsel.” Id. at 13, 224 S.E.2d at 602. Emphasizing “[t]he atmosphere ... of confusion and of uncertainty” that pervaded the trial, we granted the defendant a new trial and held “that, upon request, a defendant who interposes a defense of insanity to a criminal charge is entitled to an instruction by the trial judge setting out in substance the commitment procedures ... applicable to acquittal by reason of mental illness.” Id. at 15, 224 S.E.2d at 604.
Here, in accordance with Hammonds, the trial court instructed the jury on the relevant commitment procedures. The trial court stated:
The defendant found not guilty by reason of insanity shall immediately be committed to a State mental facility. After the defendant has been automatically committed, the defendant shall be provided a hearing within 50 *322 days. At this hearing the defendant shall have the burden of proving by a preponderance of the evidence that the defendant no longer has a mental illness or is no longer dangerous to others. If the court is so satisfied, it shall order the defendant discharged and released. If the court finds that the defendant has not met the defendant’s burden of proof, then it shall order that inpatient commitment continue for a period not to exceed 90 days. This involuntary commitment will continue subject to periodic review until the court finds that the defendant no longer has a mental illness or is no longer dangerous to others.
Neverthless, even with the additional instructions required by Hammonds, uncertainty remains as to how long a defendant will be committed if acquitted by reason of insanity. A juror has no way to estimate the likelihood that the defendant could be released at the hearing that must be provided “before the expiration of 50 days from the date of his commitment.” N.C.G.S. § 122C-268.1(a) (2015). As in Hammonds, a juror who believes the evidence of insanity might nevertheless be motivated to find the defendant guilty based on fear for the safety of the community. In light of the unique uncertainty involved in a plea of not guilty by reason of insanity, it is inappropriately inflammatory for a prosecutor to speculate about the possibility that a defendant who was found not guilty by reason of insanity could be released after a short period of time.
Other courts have considered this issue and have shed light on its unique nature. See, e.g., Dunn v. State, 277 Ala. 39, 43, 166 So. 2d 878, 882 (1964) (reversing the defendant’s murder conviction after the solicitor argued that “if [the jury] sent this defendant as an insane man up to Tuscaloosa, the State mental institution, he wouldn’t stay up there more than ten days”); People v. Castro, 5 Cal. Rptr. 906, 908-09, 182 Cal. App. 2d 255, 259-60 (1960) (evaluating the district attorney’s remarks that “[i]f your verdict comes back legally [injsane ... just as soon as he regains his sanity, he is released” and that “he will be snubbing his nose at the Court, the jury and the Police Department,” and concluding that these remarks “were patently misconduct” and constituted “a direct appeal to passion and prejudice”); see also Durham v. United States, 237 F.2d 760, 762 (D.C. Cir. 1956) (“The judge’s statement that the defendant would ‘be released very shortly’ was highly prejudicial, for it implied a warning that dire consequences might result from a finding that the defendant was not guilty by reason of insanity.”). In State v. Johnson, 267 S.W.2d 642 (Mo. 1954), cert. denied, 351 U.S. 957 (1956), and cert. denied, 357 U.S. 922 (1958), the prosecutor argued in pertinent part that if the jury *323 found the defendant not guilty by reason of insanity, “he would be out in two months.” Id. at 645. The Missouri Supreme Court concluded that the prosecutor “was attempting to engender in the minds of the jurors the fear that if [the] defendant were acquitted on his defense of insanity, [he] would be soon discharged to rape again.” Id. The court stated that the effect of the argument was “to incite the jury” and to urge the jury to make a decision “without reference to ... the evidence tending to prove or disprove that [the] defendant was insane.” Id. The court reversed the defendant’s convictions. Id. at 646.
In People v. Stack, 244 Ill. App. 3d 166, 613 N.E.2d 1175, appeal denied, 151 Ill. 2d 574, 616 N.E.2d 345 (1993), the prosecutor stated that a finding of not guilty by reason of insanity would allow the defendant to “beat this case” and “get[ ] out the door.” Id. at 170, 613 N.E.2d at 1178. The Illinois appellate court stated that “[t]hese types of comments could only play on an insanity jury’s inherent fear that its verdict might set a dangerous mah free.” Id. at 171-72, 613 N.E.2d at 1179. The court explained that regardless of whether a prosecutor’s comments suggest “an automatic release, an immediate release in the near future, or one sometime down the road,” “[a]ll such comments have the same prejudicial effect in insanity cases, and all are not to be tolerated.” Id. at 177, 613 N.E.2d at 1182.
In the case sub judice the prosecutor told the jury it was “very possible” that defendant could be released within fifty days if the jury returned such a verdict. While the prosecutor accurately also mentioned the finding that would have to be made before such a release became possible, the argument implied that such a finding was routine.
Instead, history shows that few who are acquitted of murder or another serious crime on the grounds of insanity are released shortly after their acquittal. One need look no further than the case of John Hinkley, Jr., who was acquitted in 1982 on the basis of insanity of shooting President Ronald Reagan and three others, but was not released from institutional psychiatric care until 2016. Gardiner Harris, John Hinckley, Who Tried to Kill Reagan, Will Be Released, N.Y. Times (July 27, 2016), http://www.nytimes.com/2016/07/28/us/hinckley-who-tried-to-kill-reagan-to-be-released.html. Closer to home, Michael Hayes was not released completely until 2012 following his 1989 acquittal on the basis of insanity of four murders in Forsyth County. Michael Hewlett, For first time in 20 years, Michael Hayes is free of court supervision, Winston-Salem J. (Mar. 1, 2012) http://www.joumainow.com/news/local/ for-first-time-in-years-michael-hayes-is-free-of/article_d5514c21-a980-5bf3-934e-53b3e76e8c05.html.
*324 A prosecutor may aptly oppose a verdict of not guilty by reason of insanity, but the argument should neither distort the process that follows such a verdict nor pander to the emotions of the jurors. The suggestion here that defendant could “very well” soon walk scot-free was inaccurate, misleading, and prejudicial. Accordingly, I join in the majority’s conclusion that the prosecutor’s argument in this case was improper.
Justices EDMUNDS and ERVIN join in this concurring opinion.