Manly, J.
 

 The first question, which the record presents, is, whether the declarations of defendant were competent, in his behalf, to show how he received a certain wound.
 

 It is stated that the declarations were made shortly after the homicide. There is no principle, upon which these can be held admissible, except as a part of the
 
 “ res
 
 gestee,” and the statement of the case excludes the idea that they were of this nature. The declarations were after the act was past and done. This question has been brought under review in this Court on several former occasions, which will be seen by a reference to the cases of
 
 State
 
 v.
 
 Scott,
 
 1 Hawks, 24;
 
 State
 
 v.
 
 Huntley,
 
 3 Ire. 418 ;
 
 State
 
 v.
 
 Tilly,
 
 do. 424. The professional idea seems to have been that a narrative given by a person, who has committed a homicide, as to how it happened, immediately after the act, and when the first proper opportunity offered, should be admitted. Rut this evidence, though dictated by what, in divers supposable cases, might be deemed a
 
 necessity,
 
 is so clearly against principle, and entitled, in the greatest number of instances, to so little credit, and is so well calculated to
 
 obscure
 
 rather than elucidate a transaction, that the Court have uniformly adhered to their original judgment, by which it was excluded. 'It has been no where, that we are aware of, interpolated as a rule of evidence, upon the common law, by legislation or otherwise. In the case before us, the circumstances under which the declarations, in question, were made, are so vaguely stated, as not to bring them within any proposed or reasonable rule; But we make no question about this. Take the statement of the case in any sense, and the declarations are plainly excluded by the “well-settled law of evidence in North Carolina. They must
 
 *467
 
 be a part of the
 
 res gestas,
 
 and come in as explanation of an act being done when they were made, or not at all.
 

 The second question arises upon a position taken by the prisoner’s counsel, that if the killing was to protect prisoner’s property from the trespass of the deceased, it would be an extenuated case of homicide. In this position, it seems, the Court did not concur. The matter involved in this point, has been before this Court heretofore, on more occasions than one. It seems to have been first carefully considered in the case of the
 
 State
 
 v.
 
 Morgan,
 
 3 Ire. 186, and, again, in the
 
 State
 
 v.
 
 McDonald,
 
 4 Jones, 19. In these two cases, it is fully settled, if a party deliberately kill to prevent a mere trespass to property, he is guilty of murder.
 

 The third and last question, made upon the record, arises out of proofs, in respect to the mental condition of the prisoner. The record states the prisoner’s counsel insisted that, although the prisoner knew it was wrong to kill the deceased, yet, if he was impelled to the act by a moral power, which he cordd not resist, he was excusable. The words, “ moral power,” may mean threats, duress of imprisonment, or an assault imperilling life, which is the usual sense of the phrase, or it may mean, some
 
 supernatural agency.
 
 The former construction would make the position of the counsel entirely inapplicable to the case ; we, therefore, adopt the latter. The position, thus interpreted, does not fall within any approved definition of a “
 
 non compos
 
 mentis.”
 

 It assumes that the accused knew the nature of his act and .that it was wrong. The law does not recognize any moral power compelling one to do what he knows is wrong. “To know the right and still the wrong pursue,” proceeds from a perverse will brought about by the seductions of the evil one, but which nevertheless, with the aids that lie within our reach, as we are taught to believe, may be resisted and overcome, otherwise it would not seem to be consistent with the principles of justice to punish any malefactor. There are many appetites and passions which by long indulgence acquire a mastery over men more or less strong. Some persons indeed deem
 
 *468
 
 themselves incapable of exerting strength of will sufficient to arrest their rule,- — -speak of them as irresistible, and impotently continue under their dominion; but the law is far from excusing criminal acts committed under the impulse of such passions. To excuse one from criminal responsibility the mind must, in the language of the Judge below, be insane. The accused should be in such a state from mental disease as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know he was doing what was wrong, and this should be clearly established. This test, a knowledge of right and wrong, has long been resorted to as a general criterion for deciding upon legal accountability, and with a restricted application to the act then about to be committed, is approved by the highest authorities. But we do not undertake to lay down any rule of universal application. It seems to be chimerical to attempt to do so from the very nature of things, for insanity is a disease and, as is the case with all other diseases, the fact of its existence is not established by a single symptom, but by a body of symptoms, no particular one of which is present in every case. Imperfect as the rule may be, it covers a great variety of cases and may aid the tribunals of the country in judging of this most difficult subject. The case put of a criminal act committed under the belief that it was commanded by God, would fall under the rule. The perpetrator in such would not know he was doing what was wrong, but on the contrary, believe he was doing what was right in obeying a power who had a right to command him. This condition of mind would constitute insane delusion in respect to the particular act committed, and if clearly established by proof of pre-existent facts, would excuse from responsibility.
 

 It will thus be seen that instructions, in conformity with the argument of prisoner’s counsel, ought not to have been given. If the prisoner knew that what he did was wrong, the law presumes that he had the power to
 
 resist
 
 it, against all supernatural agencies, and holds him amenable to punishment. There is no error in the instructions actually given
 
 *469
 
 upon this subject, and in the absence of any prayer for other specific instructions, there is no omission, of which the prisoner has a legal right to complain.
 

 ' There being no error found upon the record, this must be certified to the Superior Court of law for Caswell, that the said Court may proceed again to pronounce the judgment of the law.
 

 Per Curiam,
 

 Judgment affirmed.