STATE OF NORTH CAROLINA v. PRESTON GLENN HUMPHREY

No. 59

(Filed 1 June 1973)

1. **Criminal Law § 34; Rape § 4— evidence of defendant's guilt of a subsequent offense — admissibility to show quo animo**

Trial court in a rape prosecution did not err in admitting evidence concerning the commission of an offense involving indecent exposure which allegedly occurred a short time after the commission of the charged crime where that evidence was competent to show defendant's *quo animo*, or state of mind; moreover, in the light of the overwhelming evidence, including defendant's confession, there was no reasonable probability that the admission of the evidence in question might have contributed to defendant's conviction.

2. **Criminal Law §§ 5, 63— criminal responsibility — right and wrong test — irresistible impulse doctrine**

The test of criminal responsibility is not the "irresistible impulse doctrine," rather, it is the capacity to distinguish between right and wrong at the time and in respect of the matter under investigation; therefore, the trial judge in a rape case properly refused to allow psychiatric testimony with respect to an "uncontrollable urge" under which defendant allegedly committed the offense, and he correctly refused to give the special instructions tendered by defendant.

APPEAL by defendant from *Godwin, S. J.,* 6 November 1972 Special Criminal Session of WAKE Superior Court.

Defendant was tried on a bill of indictment charging the crime of rape. Upon his arraignment he entered a plea of not guilty.

The State's evidence tended to show that on the night of 15 July 1972 Miss Donna Jo Connally, who was director of religious life for Youth Camps, Inc., was in Faircloth Dormitory at Meredith College checking rooms to see if they were ready to accommodate girls who were arriving on the following day. As she walked along the first floor hall, she observed a man approaching and asked if she could help him. He continued to walk toward her, saying that he was looking for a girl named Diane. As he came closer Miss Connally observed that his private parts were exposed, and she thereupon tried to lock herself in a room. He caught her, and in the ensuing struggle she fell to the floor. He began ripping off her clothes and then took her into a room, where he finished taking off her clothes. He took off his own clothes and despite her pleas, screams and struggles had intercourse with her against her

will. He left the dormitory, and Miss Connally sought help and was thereafter carried to Rex Hospital.

The State offered medical testimony which disclosed that the doctors observed bruises and lacerations on the body of Miss Connally. The examination further disclosed a laceration of the hymen. Dr. Davis, a pathologist, testified that intercourse had definitely taken place.

Defendant was picked up by police officers at a parking lot at approximately 2:15 a.m. He voluntarily accompanied the officers to the police station where he later prepared and signed a statement. The statement admitted the raping of Donna Jo Connally and also related that in the early morning hours of 16 July he followed a woman home and while completely naked walked up into the next yard. He left when she turned on the lights and started the motor of her automobile.

At trial defendant testified and admitted that he had raped Miss Connally. He stated: "I didn't want to do it to her. I just had to. I mean it just—I couldn't control it. I couldn't stop it."

Defendant also offered as a witness Dr. Robert N. Harper, a medical expert in psychiatry.

The trial judge conducted a voir dire hearing on the State's objection to Dr. Harper's testimony concerning defendant's mental condition. At the close of the voir dire hearing, the judge indicated that he would sustain the State's objection to any testimony by the witness to the effect "that the defendant was caught up in an uncontrollable urge to have sexual intercourse with Miss Connally which he could not control, and that the act of rape charged in the bill of indictment probably would not have occurred but for said uncontrollable urge." Thereafter Dr. Harper testified before the jury that in his opinion defendant understood and appreciated the nature and quality of his act and that defendant was aware of its wrongful nature. The trial judge refused to allow the witness to express an opinion as to whether defendant possessed sufficient power to prevent himself from committing the act or from stating his opinion that the act would not have occurred but for mental disease or defect afflicting defendant at the time it was committed.

The jury returned a verdict of guilty, and defendant appealed from judgment imposing a sentence of life imprisonment.

Attorney General Morgan; Assistant Attorney General Millard R. Rich, Jr. and Assistant Attorney General, Richard B. Conely for the State.

Carlos W. Murray, Jr. for appellant.

BRANCH, Justice.

[1] Defendant first assigns as error the admission of evidence concerning the commission of an offense involving indecent exposure which allegedly occurred a short time after the commission of the charged crime.

The general rule in North Carolina is that the State may not offer proof of another crime independent of and distinct from the crime for which defendant is being prosecuted even though the separate offense is of the same nature as the charged crime. *State v. Long,* 280 N.C. 633, 187 S.E. 2d 47; *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364; 1 Stansbury North Carolina Evidence § 91 (Brandis rev. 1973). However, such evidence is competent to show "the *quo animo,* intent, design, guilty knowledge, or scienter, or to make out the *res gestae,* or to exhibit a chain of circumstances in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions." *State v. Jenerett,* 281 N.C. 81, 187 S.E. 2d 735; *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241.

The evidence here challenged was competent to show defendant's *quo animo,* or state of mind.

Further, in light of the overwhelming evidence, including defendant's confession, we do not believe there is a reasonable probability that the admission of this evidence might have contributed to defendant's conviction. *State v. Thacker,* 281 N.C. 447, 189 S.E. 2d 145; *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677.

This assignment of error is overruled.

[2] Defendant's remaining assignments of error relate to the rulings of the trial judge sustaining the State's objections to psychiatric testimony concerning defendant's mental state as affecting his criminal responsibility and intent, and the refusal of the trial judge to give special instructions which would mandate an acquittal if the jury found that defendant's actions resulted from an irresistible, uncontrollable impulse.

Defendant sought to elicit from Dr. Robert N. Harper an opinion as to whether "defendant possessed sufficient power to prevent himself from committing the act." The trial judge sustained the State's objection to this line of questioning.

For more than 100 years this Court has recognized the test of criminal responsibility to be the ability of the accused at the time he committed the act to realize and appreciate the nature and quality thereof—his ability to distinguish between right and wrong. *State v. Mercer,* 275 N.C. 108, 165 S.E. 2d 328; *State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802, rev'd on other grounds 392 U.S. 649, 20 L.Ed. 2d 1350, 88 S.Ct. 2290; *State v. Creech,* 229 N.C. 662, 51 S.E. 2d 348; *State v. Potts,* 100 N.C. 457, 6 S.E. 657; *State v. Brandon,* 53 N.C. 463. North Carolina, as well as many other jurisdictions, has steadfastly refused to recognize the "irresistible impulse doctrine" as a test of criminal responsibility. *State v. Spence, supra; State v. Creech, supra; State v. Brandon, supra;* Annot., 173 A.L.R. 391. See generally, Annot., 22 A.L.R. 3d 1228; Annot., 45 A.L.R. 2d 1447; Annot., 70 A.L.R. 659.

In *State v. Spence, supra,* former Chief Justice Parker, quoting respectively from *State v. Creech, supra,* and *Leland v. Oregon,* 343 U.S. 790, 96 L.Ed. 1302, 72 S.Ct. 1002, reh. den. 344 U.S. 848, 97 L.Ed. 659, 73 S.Ct. 4 stated:

" 'The test of responsibility is the capacity to distinguish between right and wrong at the time and in respect of the matter under investigation. *S. v. Potts,* 100 N.C. 457, 6 S.E. 657; *S. v. Brandon,* 53 N.C. 463. He who knows the right and still the wrong pursues is amenable to the criminal law. *S. v. Jenkins,* 208 N.C. 740, 182 S.E. 324. On the other hand, if "the accused should be in such a state of mental disease as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing wrong," the law does not hold him accountable for his acts, for guilt arises from volition, and not from a diseased mind. *S. v. Haywood,* 61 N.C. 376.

'We are aware of the criticism of this standard by some psychiatrists and others. Still, the critics have offered nothing better. It has the merit of being well established, practical and so plain "that he may run that readeth it." Hab. 2:2. Moreover, it should be remembered that the criminal law applies equally to all sorts and conditions of

people. It ought to be sufficiently clear to be understood by the ordinary citizen.'

\* \* \*

' . . . Knowledge of right and wrong is the exclusive test of criminal responsibility in a majority of American jurisdictions. The science of psychiatry has made tremendous strides since that test was laid down in *M'Naghten's* Case, but the progress of science has not reached a point where its learning would compel us to require the states to eliminate the right and wrong test from their criminal law. . . . ' "

Defendant's counsel ably presented arguments for adoption of the "irresistible impulse doctrine." However, neither defendant's arguments nor our research disclose reasons sufficiently persuasive to warrant modification or abrogation of the long recognized "right and wrong" test of criminal responsibility.

The trial judge's rulings on the psychiatric testimony offered by defendant was without error, and he correctly refused to give the special instructions tendered by defendant.

We have carefully examined the entire record of this case and find no prejudicial error.

No error.