STATE OF NORTH CAROLINA v. JOSEPH WILLIAM ARTIS

No. 7412SC141

(Filed 6 March 1974)

**Criminal Law § 34; Homicide § 15— murder of child — prior mistreatment**
    In a prosecution of defendant for the murder of his 2½ year old child by beating and kicking her, testimony by defendant's wife as to defendant's mistreatment of his children on prior occasions was competent to show *quo animo*, or state of mind.

APPEAL by defendant from *Canaday, Judge,* 4 September 1973 Criminal Session of Superior Court held in CUMBERLAND County.

Defendant was charged with the murder of his 2½ years old daughter, Myra Ann Artis, on or about 24 March 1973. Pertinent evidence, briefly summarized, tended to show:

Around 5:00 or 6:00 p.m. on 22 March 1973, defendant went home after drinking intoxicants. He got mad with Myra Ann and proceeded to kick her "about six times." Defendant's wife testified: "She [Myra Ann] went upstairs and he went up there and started whipping her. When she was upstairs, he took his fist and hit her in the stomach, and in the side. He was doing it like he was beating a man or something like that. He was punching her in the stomach and in the back. I would say that he hit her four times. After that he whipped her

with a leather belt. She was crying. I gave her a bath and put her to sleep. He then came in and went to sleep."

Two days later, defendant and his wife went to the store and when they returned, Mrs. Artis noticed that Myra Ann would not sit up. Mrs. Artis further testified: "I went upstairs and Joseph, my husband, he came upstairs and found some boo boo on the floor. My little girl boo booed on herself downstairs and I was getting ready to clean her up. I went upstairs and wiped her off. I was changing her panties. This was March 24. Joseph came upstairs and went in the bathroom. He found some boo boo on the floor and got mad and started whipping Myra Ann Artis. He started whipping her with the belt and after a while he started throwing a little round ball at her. He was hitting her all on the stomach and the chest. She was in the room, standing by the couch. She had her back to the couch. He was standing by the door just throwing the ball real hard." I saw him hit her ten times."

Thereafter, defendant filled a bathtub with cold water, placed Myra Ann in the tub and kept her in there for about fifteen minutes. When he took her out "she was just shaking and couldn't stand up." A short while later, after further mistreatment by defendant, the child died.

A pathologist testified that he performed an autopsy on the body of the child; that death resulted from a ruptured liver which could have been caused by a blow to her abdomen and that death could have occurred some two days after the injury.

The jury found defendant guilty of second-degree murder and from judgment imposing prison sentence of not less than 25 nor more than 30 years, with credit given for time spent in jail pending trial, defendant appealed.

*Attorney General Robert Morgan, by Associate Attorney Charles R. Hassell, Jr., for the State.*

*Sol G. Cherry, public defender, for defendant appellant.*

BRITT, Judge.

By his sole assignment of error, defendant contends the court committed prejudicial error in permitting his wife to testify with respect to instances prior to 22 March 1973 wherein defendant mistreated his children (consisting of Myra Ann and

a two-year-old son). Defendant argues that admitting the testimony was violative of the rule that in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. The assignment is without merit.

In *State v. Humphrey,* 283 N.C. 570, 572, 196 S.E. 2d 516, 518 (1973), we find:

> "The general rule in North Carolina is that the State may not offer proof of another crime independent of and distinct from the crime for which defendant is being prosecuted even though the separate offense is of the same nature as the charged crime. *State v. Long,* 280 N.C. 633, 187 S.E. 2d 47; *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364; 1 Stansbury North Carolina Evidence § 91 (Brandis rev. 1973). However, such evidence is competent to show 'the *quo animo,* intent, design, guilty knowledge, or scienter, or to make out the *res gestae,* or to exhibit a chain of circumstances in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions.' *State v. Jenerett,* 281 N.C. 81, 187 S.E. 2d 735; *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241."

See also *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969).

We hold that the challenged evidence was competent to show defendant's *quo animo,* or state of mind, and the assignment of error is overruled.

No error.

Judges PARKER and VAUGHN concur.