STATE OF NORTH CAROLINA v. GEORGE McCALL RICK

No. 8027SC999

(Filed 7 April 1981)

**Criminal Law § 34.8– rape case – competency of evidence of other assaults**

 In this prosecution for rape, evidence that defendant committed assaults on two other women on the same date as the rape was competent to show defendant's state of mind and his common scheme and design to apply physical force in the commission of crimes of violence; furthermore, the two assaults were sufficiently close in time to the alleged rape that the incidents "presented circumstances, not too remote in time to have probative value, which tended to aid the jury in understanding the conduct and motives" of defendant.

 Judge WEBB dissenting.

APPEAL by defendant from *Lewis, Judge.* Judgment entered 19 June 1980 in Superior Court, LINCOLN County. Heard in the Court of Appeals 3 March 1981.

Defendant was charged in a proper bill of indictment with the 11 March 1980 first degree rape of Brenda Leigh Allen. Defendant pleaded not guilty and was found guilty of second degree rape. From a judgment imposing a prison sentence of twenty years minimum, twenty-five years maximum, he appealed.

*Attorney General Edmisten, by Assistant Attorney General Richard L. Griffin, for the State.*

*Thomas M. Shuford, Jr., for the defendant appellant.*

HEDRICK, Judge.

Defendant's sole assignment of error is set out in the record as follows:

 Defendant appellant contends that it was error for the trial judge to admit the testimony of Susan Diane Cogdill and Miss Carrie Jenkins on the grounds that such judicial action was in violation of the rule of law prohibiting the State from offering evidence that the accused had committed other distinct independent or separate offenses.

After the prosecuting witness had testified that defendant came to her home, went outside with her, and raped her at

approximately 9:00 p.m. on 11 March 1980, Mrs. Susan Cogdill was allowed over defendant's objection to testify as follows:

> I was at the Armory on March 11, 1980 a little after 5:00. ... My little girl and her friend was taking baton lessons at the Armory. ... [T]hey were about finished, so I came out to pull the car around to pick them up. ... In the meantime the defendant George Rick was coming up on my side of the car. I did not know Mr. Rick before that day. ... I saw him walking coming toward my door as if he was going to ask me something. I was fixing to roll the window down when he jerked the door open, and he said "Move over;" and I said "No." He said "I said move over" and I again said "No;" and he was pushing me. When I wouldn't move over in the car he started choking me with his hands. I could hardly get my breath, but I managed to tell my daughter to go get help. ... He started choking me harder and I knew if I didn't get him out of the car I was afraid something would happen if he took the car, so I pushed him as hard as I could, and he hit the road. ... [H]e got up and ran ... up the hill and went into the woods.

Mrs. Carrie Jenkins was then allowed over defendant's objection to testify as follows:

> I live alone. ...

> The Armory is right down from behind my house. ... I had never seen the defendant prior to March 11th. On the afternoon of March 11th I went to the grocery store and got back to my house around 5:30. ... I got out of the car ... and went in the house ... and then went in the living room and sat down in a chair. George Rick walked in my house and asked me if I was alone, and I told him yes. He said "Well, I'm going to rob you." I said "What you gonna rob me for? I ain't got no money." ... He got me by the shoulders and pulled me up out of the chair and made me walk backwards to my bedroom, shoved me down on the bed and told me to pull my clothes off. I started to raise up to unbutton my blouse and when I did he hit me; ... He then grabbed my blouse and jerked it open and I just had my arms in the sleeves. He asked me where the car keys was, and I told him ... in the kitchen. He went in there and got the keys and my little kitchen knife and came back in my bedroom and cut

the rest of my clothes off; ... all I had on was just my arms in the blouse. Then he cut one of my blankets and got some pieces to to tie me up. He tied my hands ...

He took the keys and went outside and tried to start the car. ... I saw him coming back ... [a]nd he came in then, choked me and asked me which key starts the car. I could hardly get my breath and I picked the key out ... He said "Now, lay there 5 minutes," and he went out the door ...

[I] saw the defendant driving my car out the driveway. ...

Citing *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954), defendant argues that the foregoing evidence was irrelevant, prejudicial, and for no other purpose than to show his disposition to commit the offense of rape, the crime with which he was charged.

Evidence of other offenses is inadmissible on the issue of guilt if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime [footnotes omitted].

1 Stansbury's N.C. Evidence § 91 (Brandis rev. 1973), at 289-290. Thus, proof of commission of other like offenses has been held competent to show *quo animo* (state of mind), intent, design, guilty knowledge, or scienter, or to make out the *res gestae*, or to exhibit a chain of circumstantial evidence with respect to the matter being tried, when such offenses are so connected with the offense charged as to throw light upon one or more of these questions. *State v. May*, 292 N.C. 644, 235 S.E. 2d 178, *cert. denied*, 434 U.S. 928, 54 L. Ed. 2d 288, 98 S. Ct. 414 (1977); *State v. Humphrey*, 283 N.C. 570, 196 S.E. 2d 516, *cert. denied*, 414 U.S. 1042, 38 L. Ed. 2d 334, 94 S. Ct. 546 (1973).

In *State v. Humphrey, supra,* where the defendant was charged with raping a woman at Meredith College, evidence was admitted that several hours after the incident, the defendant followed a woman home and while completely naked walked up and stood in the next yard until the woman got into her automobile and turned on the headlights. Our Supreme Court, in discussing the relevancy of this testimony, stated: "The evi-

dence here challenged was competent to show defendant's *quo animo*, or state of mind." *Id.* at 572, 196 S.E. 2d at 518.

In *State v. Arnold*, 284 N.C. 41, 199 S.E. 2d 423 (1973), where the defendant was charged with raping a Duke University coed, the evidence tended to show that around 9:30 p.m. the defendant drove up in his automobile to a bus stop where the prosecuting witness was standing and offered her a ride to her dormitory; after she got in, however, he took her to rural Orange County, where the alleged rape occurred. Another coed, Miriam Kaufman, was allowed to testify that at approximately 4:40 p.m. the same day defendant drove up and asked her for a ride while she was standing at the bus stop, and after she got in, he drove into rural Orange County, where she became frightened and jumped out of the automobile. A third girl, Carol Chase, was allowed to testify that at about 4:30 p.m. that day defendant stopped his automobile and asked her if she wanted a ride to the Duke campus, but she refused. In discussing the relevancy of Kaufman's testimony, our Supreme Court said: "In our opinion, Miriam Kaufman's testimony clearly disclosed a common plan, scheme and design by defendant to pick up a female person and carry her into rural Orange County in order to gratify his sexual desires." *Id.* at 49, 199 S.E. 2d at 428. With respect to the relevancy of Chase's testimony, the Court said that it "presented circumstances, not too remote in time to have probative value, which tended to aid the jury in understanding the conduct and motives" of the defendant. *Id.* at 49, 199 S.E. 2d at 429.

In the present case, the testimony given by Mrs. Cogdill and Mrs. Jenkins was relevant, in our opinion, to show defendant's state of mind and his common scheme and design to apply physical force in the commission of crimes of violence. Furthermore, the incidents to which Mrs. Cogdill and Mrs. Jenkins testified are sufficiently close in time, about four hours, to the alleged rape of Ms. Allen that the incidents "presented circumstances, not too remote in time to have probative value, which tended to aid the jury in understanding the conduct and motives" of defendant. The testimony given by Mrs. Cogdill and Mrs. Jenkins would thus be admissible, and defendant's sole assignment of error is not sustained.

We hold that defendant had a fair trial free from prejudicial error.

No error.

Judge HILL concurs.

Judge WEBB dissents.

Judge WEBB dissenting:

I dissent. I believe the majority has correctly stated the rule as to the admission of evidence of other offenses, but I do not believe it was properly applied in this case. The State offered testimony of two other assaults with intent to commit rape by the defendant on the same day as the crime of which the defendant was charged. I believe their only relevancy was to show the character of the accused or his disposition to commit an offense of the nature of the one charged. The majority relies on *State v. Arnold*, 284 N.C. 41, 199 S.E. 2d 423 (1973) and *State v. Humphrey*, 283 N.C. 570, 196 S.E. 2d 516 (1973). I would agree that these cases, particularly *Arnold*, stretch the exception to the rule that evidence of a crime is not admissible to prove another crime. I believe the rule is still viable, however. I would distinguish *Humphrey* on the ground that the defendant was relying on an irresistible impulse as a defense. Evidence of another crime was admissible to show his state of mind. I would distinguish *Arnold* on the ground that evidence of the independent crime attempted was so similar to the alleged offense that it was admissible to corroborate the pattern of action in the alleged crime at issue. I vote for a new trial.