IN THE SUPREME COURT OF NORTH CAROLINA

No. 336PA15

Filed 21 December 2016

STATE OF NORTH CAROLINA

v.

MELISSA AMBER DALTON

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 776 S.E.2d 545 (2015), finding prejudicial error after appeal from judgments entered on 14 April 2014 by Judge Marvin P. Pope, Jr. in Superior Court, Transylvania County, and ordering that defendant receive a new trial. Heard in the Supreme Court on 11 October 2016.

*Roy Cooper, Attorney General, by Jess D. Mekeel, Assistant Attorney General, for the State-appellant.*

*Ann B. Petersen for defendant-appellee.*

BEASLEY, Justice.

We consider whether the Court of Appeals erred in holding that the prosecutor's closing arguments exaggerating a defendant's likelihood of being released from civil commitment upon a finding of not guilty by reason of insanity constituted prejudicial error. We hold that the statements at issue were improper and prejudicial. Accordingly, we affirm the decision of the Court of Appeals granting defendant a new trial.

Melissa Amber Dalton (defendant) has a long history of substance abuse and mental illness, including bipolar disorder and borderline personality disorder. On or about 29 July 2009, defendant received inpatient treatment for mental health and addiction issues at the Neil Dobbins Center, a crisis treatment facility. At that time Daniel Johnson, M.D. diagnosed defendant with cocaine dependence, cannabis abuse and substance induced mood disorder, borderline personality disorder, and intrauterine pregnancy. Dr. Johnson prescribed Lexapro, a selective serotonin reuptake inhibitor (SSRI). Unbeknownst to Dr. Johnson, defendant had previously reacted negatively to another SSRI, Prozac. Defendant was discharged from the facility approximately three days later.

After defendant returned home from Neil Dobbins, she continued taking Lexapro. Defendant's boyfriend noticed that defendant was acting unpredictably, and he removed their infant daughter from defendant's apartment. On the night of 20 August 2009, defendant's boyfriend called defendant's mother and asked her to check on defendant because he noticed that defendant seemed depressed. After observing defendant's strange behavior, defendant's mother went to the magistrate's office and "tried to have [defendant] committed." The magistrate told her to speak with a social worker and return the next day. That evening defendant exchanged some electronics for a gram of crack cocaine.

Defendant lived in an apartment in Brevard, North Carolina, where Naomi Jean Barker (Barker) and Richard Holden (Holden) were her neighbors. Early in the morning of 21 August 2009, defendant knocked on Barker and Holden's front door claiming to have money she previously borrowed from them. When Holden opened the door, defendant pushed him against the wall and stabbed him repeatedly. Defendant then approached Barker, calling her by the wrong name, and stabbed her six times. Defendant removed five dollars from Holden's wallet and left the apartment. Barker called 911. The police arrived to find Holden dead at the scene and Barker suffering from serious injuries.

Shortly after the incident, a rescue squad member saw defendant, who was still wearing bloody clothes, trying to catch a ride at a nearby church. An officer located defendant at the church and brought her to the police station, where she was interviewed by an S.B.I. agent. When the agent recited defendant's *Miranda* rights, she refused to speak further and requested an attorney.

On 5 October 2009, defendant was indicted for first-degree murder, first-degree burglary, and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant indicated her intent to plead the defense of insanity and was subsequently evaluated by David Bartholomew, M.D. regarding her capacity to proceed and her mental condition at the time of the offense.

At trial the defense offered two expert witnesses to testify as to defendant's mental state. Wilkie Wilson, Ph.D., an expert in neuropharmacology, testified about the effects of drugs on defendant's behavior at the time of the crime. He opined that SSRIs, such as Lexapro, should not be prescribed to people with bipolar disorder because this class of drugs "can greatly disturb their mental function and push them over from a controlled state into mania." Dr. Wilson also opined that at the time of the homicide defendant was in a manic state.

George Corvin, M.D., a psychiatrist, testified about defendant's past history of mental illness and her state of mind at the time of the homicide. He opined that defendant's mental illness, her negative reactions to SSRIs, and her drug use affected her mental state at the time of the homicide. Ultimately, Dr. Corvin testified that defendant was manic at the time of the homicide. He also opined that, although treatable, defendant's mental illness cannot be cured and she will always be an addict, and added that if "[defendant] were not in treatment at all and were in a highly unstable, chaotic, abusive environment again and were to resume use of illicit substances, [then] her danger and her risk of recidivism . . . would go up substantially." The State did not present any expert witnesses to testify regarding defendant's mental condition.

At the charge conference, the prosecutor asked if he could comment on the civil commitment procedures that would apply if defendant was found not guilty by reason

of insanity. The trial court agreed to permit the comment, but cautioned the prosecutor not to exaggerate defendant's chance of being released after fifty days. During closing arguments, the prosecutor made the following statements:

> [Prosecutor]: . . . . [Defendant] doesn't remember, so she says you can't hold me accountable, so find me not guilty by reason of insanity.
>
> And that way, as one of the lawyers mentioned, then she can be committed to a hospital if you find that verdict. *And it is very possible that in 50 days, if she shows by a preponderance of the evidence that she is not a threat to anyone else or herself, she will be back home.*
>
> [Defense counsel]: Objection.
>
> THE COURT: Overruled.
>
> [Prosecutor]: *She very well could be back home in less than two months.*

(Emphasis added.) The prosecutor also argued, without objection, that defendant's request for a lawyer during the police interview was evidence of her sanity at the time of the homicide.

On 14 April 2014, the jury found defendant guilty of first-degree murder under a theory of felony murder, first-degree burglary, and assault with a deadly weapon inflicting serious injury. The jury declined to find defendant not guilty by reason of insanity for all offenses. The trial court sentenced defendant to life imprisonment without parole and a consecutive term of twenty-six to forty-one months' of

imprisonment. The trial court arrested judgment on the first-degree burglary conviction.

Defendant appealed her convictions to the Court of Appeals, arguing: (1) The trial court erred in overruling her objection to the State's argument that if she was found not guilty by reason of insanity, it was "very possible" that she could be released from civil commitment in fifty days; and (2) The trial court erred in failing to intervene *ex mero motu* when the State argued that her request for counsel during a police interview showed that she was sane. In a unanimous opinion filed on 15 September 2015, the Court of Appeals found prejudicial error in the prosecutor's closing arguments regarding defendant's likelihood of release if found not guilty by reason of insanity and held that defendant was entitled to a new trial. The Court of Appeals did not address defendant's argument regarding invocation of her *Miranda* rights as evidence of sanity.

On 17 March 2016, this Court allowed the State's petition for discretionary review on the issue of "[w]hether the Court of Appeals erred in distorting the transcript, applying an incorrect standard of review, and finding prejudicial error based upon the prosecutor's statements in closing argument regarding the potential for defendant's release from civil commitment if found not guilty by reason of insanity."

First, the State contends that the Court of Appeals applied the incorrect standard of review because the court improperly read the prosecutor's two separate statements as one. Specifically, the State argues that the second statement should be reviewed for gross impropriety, not abuse of discretion, because defendant did not object to that statement at trial. We disagree.

When a defendant objects at trial, this Court reviews closing arguments to determine "whether the trial court abused its discretion by failing to sustain the objection." *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002) (citations omitted). In reviewing closing arguments for an abuse of discretion, this Court must "first determine[ ] if the remarks were improper." *Id.* at 131, 558 S.E.2d at 106. If so, this Court must then "determine if the remarks were of such a magnitude that their inclusion prejudiced defendant, and thus should have been excluded by the trial court." *Id.* at 131, 558 S.E.2d at 106 (citing *Coble v. Coble*, 79 N.C. 589 (1878); and *State v. Tyson*, 133 N.C. 692, 698, 45 S.E. 838, 840 (1903)). Conversely, when a defendant fails to object at closing, this Court must determine if the argument was "so grossly improper that the trial court erred in failing to intervene *ex mero motu*." *State v. Barden*, 356 N.C. 316, 358, 572 S.E.2d 108, 135 (2002) (quoting *State v. Trull*, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80 (1999)), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003).

Here the issue is whether the prosecutor's closing arguments mentioning defendant's likelihood of release upon a finding of not guilty by reason of insanity were prejudicial. The State asserts that the prosecutor's arguments should be reviewed as two separate and distinct statements, the first to which defense counsel objected[1] and the second to which counsel did not.[2] "[S]tatements made during closing arguments," however, "will not be examined in isolation. 'Instead, on appeal we must give consideration to the context in which the remarks were made and the overall factual circumstances to which they referred.' " *State v. Ward*, 354 N.C. 231, 265, 555 S.E.2d 251, 273 (2001) (citing and quoting *State v. Guevara*, 349 N.C. 243, 257, 506 S.E.2d 711, 721 (1998), *cert. denied*, 526 U.S. 1133, 143 L. Ed. 2d 1013 (1999)). When viewed in context, especially considering the conversation that took place during the charge conference,[3] the second statement is not separate and distinct

---

[1] "And it is very possible that in 50 days, if she shows by a preponderance of the evidence that she is not a threat to anyone else or herself, she will be back home."

[2] "She very well could be back home in less than two months."

[3] The following discussion took place during the charge conference:

> [Prosecutor]: Judge, I would just ask the Court to allow me in closing argument to comment on [the civil commitment instruction].
>
> . . . .
>
> THE COURT: . . . I would have to limit – I mean, if you would make a statement like, well, she'll be out on the street in 50 days, that's not correct according to the law, so I would have to give them an instruction to disregard that statement, to correct that statement.
>
> [Prosecutor]: But she could be. Or she could be in five

from the first. It was made immediately after the trial court overruled the defense's objection and is a summary of the first statement.

Next, the State contends that the Court of Appeals' analysis regarding the propriety of the prosecutor's closing arguments was flawed. Specifically, the State argues that the Court of Appeals erred in relying on *State v. Millsaps*, 169 N.C. App. 340, 610 S.E.2d 437 (2005), and distinguishing *State v. Allen*, 322 N.C. 176, 367 S.E.2d 626 (1988). We disagree.

Closing arguments must "(1) be devoid of counsel's personal opinion; (2) avoid name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on appeals to passion or prejudice; and (4) be constructed from fair inferences drawn only from evidence properly admitted at trial." *Jones*, 355 N.C. at 135, 558 S.E.2d at 108; *see State v. Covington*, 290 N.C. 313, 327-28, 226 S.E.2d 629, 640 (1976) (stating that counsel "may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his side of the case" (citations omitted)). "Improper remarks are those

---

days.

> THE COURT: She could –
>
> [Prosecutor]: I think these people need to know that.
>
> THE COURT: Okay. Just be careful what you say is all I'm saying. Be cautious about it.

calculated to lead the jury astray," such as "references to matters outside the record." *Jones*, 355 N.C. at 133, 558 S.E.2d at 108. Additionally, "[i]ncorrect statements of law in closing arguments are improper." *State v. Ratliff*, 341 N.C. 610, 616, 461 S.E.2d 325, 328 (1995).

Pursuant to section 15A-1321, if a jury finds a defendant not guilty by reason of insanity, the trial court must order that the defendant be civilly committed. N.C.G.S. § 15A-1321 (2015). Within fifty days of commitment, the trial court must provide the defendant with a hearing, *id.* § 122C-268.1(a) (2015), and if, at that time, the defendant shows "by a preponderance of the evidence" that she "(i) no longer has a mental illness" or "(ii) is no longer dangerous to others," the court will release the defendant, *id.* § 122C-268.1(i) (2015). A defendant is "dangerous to others" when

> within the relevant past, the individual has inflicted or attempted to inflict or threatened to inflict serious bodily harm on another, or has acted in such a way as to create a substantial risk of serious bodily harm to another, or has engaged in extreme destruction of property; and that there is a reasonable probability that this conduct will be repeated. Previous episodes of dangerousness to others, when applicable, may be considered when determining reasonable probability of future dangerous conduct. *Clear, cogent, and convincing evidence that an individual has committed a homicide in the relevant past is prima facie evidence of dangerousness to others.*

*Id.* § 122C-3(11)(b) (2015) (emphasis added).

"During closing arguments, attorneys are given wide latitude to pursue their case." *State v. Prevatte*, 356 N.C. 178, 237, 570 S.E.2d 440, 472 (2002) (citing *State v.*

*Scott*, 343 N.C. 313, 343, 471 S.E.2d 605, 623 (1996)), *cert. denied*, 538 U.S. 986, 155 L. Ed. 2d 681 (2003).  These arguments, however, "must be viewed in context and in light of the overall factual circumstances to which they refer." *State v. Locklear*, 363 N.C. 438, 477, 681 S.E.2d 293, 320 (2009) (Brady, J., dissenting) (quoting *State v. Goss*, 361 N.C. 610, 626, 651 S.E.2d 867, 877 (2007), *cert. denied*, 555 U.S. 835, 172 L. Ed. 2d 58 (2008)).  If a prosecutor's argument regarding a defendant's release after a finding of not guilty by reason of insanity is not supported by a reasonable inference drawn from the evidence presented at trial, then such an argument is improper.  *See Millsaps*, 169 N.C. App. 340, 610 S.E.2d 437.

In *Millsaps* the defendant raised an insanity defense to first-degree murder and other related charges.  *Id.* at 341, 610 S.E.2d at 438.  Evidence presented at trial indicated that the defendant's mental illness could be treated, but not cured, and that the defendant would probably always need to be hospitalized.  *Id.* at 348, 610 S.E.2d at 442.  During closing arguments, the prosecutor said, "We submit it's 99 percent certain that [a judge] someday can and will say that, oh that conviction was six or eight or ten years ago, that's irrelevant, release him."  *Id.* at 345, 610 S.E.2d at 441.  Using an abuse of discretion standard, the court in *Millsaps* determined that the prosecutor's statements constituted error because they were outside the evidence presented at trial and held that they were "impermissibly prejudicial."  *Id.* at 348, 610 S.E.2d at 442-43.

Here, as in *Millsaps*, the evidence presented at trial does not support the assertions made by the prosecutor during closing arguments. Specifically, the evidence does not support the conclusion that if defendant was found not guilty by reason of insanity, it is "very possible" that she would be released in fifty days. Instead, the evidence demonstrated that defendant will suffer from mental illness and addiction "for the rest of her life," and that "defendant's risk of recidivism would significantly increase if she were untreated and resumed her highly unstable lifestyle." *State v. Dalton*, ___ N.C. App. ___, ___, 776 S.E.2d 545, 551 (2015) (discussing Dr. Corvin's testimony). The State did not present any expert evidence at trial to rebut these conclusions. Additionally, the homicide for which defendant was convicted is prima facie evidence of dangerousness to others. N.C.G.S. § 122C-3(11)(b). Therefore, the only reasonable inference to be drawn from the evidence presented at trial is that it is *highly unlikely* that defendant would be able to demonstrate by a preponderance of the evidence within fifty days that she is no longer dangerous to others.

We reject the State's contention that *Millsaps* is distinguishable from the facts of this case. In essence, *Millsaps* stands for the proposition that counsel's argument regarding the likelihood of a defendant's release after being found not guilty by reason of insanity must be supported by the evidence. The level of possibility or probability of release is not the salient issue; rather, it is the evidence and all reasonable inferences that can be drawn from that evidence which govern counsel's arguments

in closing. This Court's prior decisions do not support the State's possibility versus probability dichotomy, and we decline to recognize such a dichotomy at this time.

This Court also disagrees with the State's argument that *Allen* governs the disposition of this case. In *Allen* the defendant raised the defense of insanity to charges of first-degree murder and first-degree arson. 322 N.C. at 180-82, 367 S.E.2d at 628-29. During closing arguments, the prosecutor contended that if the jury found the defendant not guilty by reason of insanity, then the defendant "might be released within ninety days." *Id.* at 194, 367 S.E.2d at 636. This Court found that the prosecutor erred by "misstat[ing] the maximum recommitment period," but concluded that such "misstatement did not rise to the level of prejudicial error."[4] *Id.* at 195, 367 S.E.2d at 637. This Court did not, however, address whether the evidence presented at trial supported the argument. Despite the State's contention, this Court's silence on the issue of likelihood of release does not support a conclusion that this Court condoned the statement. Because *Allen* only addressed a misstatement of law made during closing arguments and not a misapplication of the facts, it is distinguishable from the instant case.

Finally, the State contends that the Court of Appeals' analysis regarding prejudice was flawed because defendant cannot show "a reasonable possibility" that

---

[4] The closing arguments at issue in *Allen* were reviewed for gross impropriety. *Allen*, 322 N.C. at 195, 367 S.E.2d at 636-37.

a different result would have been reached at trial had the error not been committed. *See* N.C.G.S. § 15A-1443(a) (2015). We disagree.

"Improper remarks may be prejudicial either because of their individual stigma or because of the general tenor of the argument as a whole." *Jones*, 355 N.C. at 133, 558 S.E.2d at 108. Here the overwhelming evidence demonstrated that defendant committed the violent acts for which she was convicted and that she had a long-standing history of substance abuse and mental illness. By improperly presenting to the jury that it was "very possible" that defendant would be released in fifty days, the prosecutor prejudiced defendant by persuading the jury against a finding of not guilty by reason of insanity. Therefore, a reasonable possibility exists that the jury would have found defendant not guilty by reason of insanity if the prosecutor had not made the improper remarks during closing arguments.

We hold, therefore, that the Court of Appeals correctly applied the abuse of discretion standard when reviewing the prosecutor's closing arguments. The prosecutor's arguments exaggerating the likelihood of defendant's release if found not guilty by reason of insanity constituted prejudicial error because they were not supported by the evidence. For the reasons stated, we affirm the opinion of the Court of Appeals.

AFFIRMED.

Justice JACKSON concurring.

Although I concur in the majority opinion, I write separately to emphasize the impropriety of the prosecutor's jury argument discouraging a potential verdict of not guilty by reason of insanity.

In any case in which a criminal defendant pleads not guilty by reason of insanity, evidence necessarily will be presented that the defendant has mental illness and that the mental illness had a causal role in the defendant's criminal behavior. *See, e.g.*, *State v. Jones*, 293 N.C. 413, 425, 238 S.E.2d. 482, 490 (1977) ("[T]he test of insanity as a defense to a criminal charge is whether the accused, at the time of the alleged act, was laboring under such a defect of reason, from disease or deficiency of the mind, as to be incapable of knowing the nature and quality of the act, or, if he does know this, was, by reason of such defect of reason, incapable of distinguishing between right and wrong in relation to such act." (citing, *inter alia*, *State v. Humphrey*, 283 N.C. 570, 196 S.E.2d 516, *cert. denied*, 414 U.S. 1042 (1973))). Because the defendant has the burden of proving the affirmative defense of insanity, *State v. Wetmore*, 298 N.C. 743, 746-47, 259 S.E.2d 870, 873 (1979), even the defendant's own attorney may provide evidence that the defendant's mental illness caused him or her to engage in conduct that a jury might find shocking or reprehensible. Consequently, this Court has acknowledged that juries may feel "fear

for the safety of the community" in cases involving the insanity defense. *See State v. Hammonds*, 290 N.C. 1, 15, 224 S.E.2d 595, 604 (1976).

In *Hammonds*, a case decided before contemporary procedures dealing with a plea of not guilty by reason of insanity were put in place, this Court explained that "fear for the safety of the community" could motivate a jury to "insure that [a] defendant will be incarcerated for his own safety and the safety of the community at large." *Id.* at 15, 224 S.E.2d at 603-04. We noted that "[t]here was considerable evidence that [the] defendant was incapable of knowing right from wrong at the time [of the crime], and also evidence that his mental condition would worsen with age." *Id.* at 15, 224 S.E.2d at 603. We explained:

> [A]lthough the jury understands that a verdict of guilty means the defendant will be punished by a prison sentence or fine, and that a verdict of not guilty means the defendant will go free, the average jury does not know what a verdict of not guilty by reason of insanity will mean to the defendant. This uncertainty may lead the jury to convict the accused in a mistaken belief that he will be set free if an insanity verdict is returned.

*Id.* at 14, 224 S.E.2d at 603. In *Hammonds* the district attorney had stated during closing arguments that a finding of not guilty by reason of insanity would result in the defendant's "walk[ing] out of this courtroom not guilty, returned to this community." *Id.* at 11, 224 S.E.2d at 601. Although the trial court sustained the defendant's objection to the State's argument, the court refused the defendant's request for an instruction explaining the statutory procedure for commitment

following a verdict of not guilty by reason of insanity. *Id.* at 11, 224 S.E.2d at 601.

We concluded that "the fate of [the] defendant, should he be acquitted by reason of

insanity, became a central and confusing issue in the arguments of counsel." *Id.* at

13, 224 S.E.2d at 602. Emphasizing "[t]he atmosphere . . . of confusion and of

uncertainty" that pervaded the trial, we granted the defendant a new trial and held

"that, upon request, a defendant who interposes a defense of insanity to a criminal

charge is entitled to an instruction by the trial judge setting out in substance the

commitment procedures . . . applicable to acquittal by reason of mental illness." *Id.*

at 15, 224 S.E.2d at 604.

Here, in accordance with *Hammonds*, the trial court instructed the jury on the

relevant commitment procedures. The trial court stated:

> The defendant found not guilty by reason of insanity
> shall immediately be committed to a State mental facility.
> After the defendant has been automatically committed, the
> defendant shall be provided a hearing within 50 days. At
> this hearing the defendant shall have the burden of proving
> by a preponderance of the evidence that the defendant no
> longer has a mental illness or is no longer dangerous to
> others. If the court is so satisfied, it shall order the
> defendant discharged and released. If the court finds that
> the defendant has not met the defendant's burden of proof,
> then it shall order that inpatient commitment continue for
> a period not to exceed 90 days. This involuntary
> commitment will continue subject to periodic review until
> the court finds that the defendant no longer has a mental
> illness or is no longer dangerous to others.

Neverthless, even with the additional instructions required by *Hammonds*,

uncertainty remains as to how long a defendant will be committed if acquitted by

reason of insanity. A juror has no way to estimate the likelihood that the defendant could be released at the hearing that must be provided "before the expiration of 50 days from the date of his commitment." N.C.G.S. § 122C-268.1(a) (2015). As in *Hammonds*, a juror who believes the evidence of insanity might nevertheless be motivated to find the defendant guilty based on fear for the safety of the community. In light of the unique uncertainty involved in a plea of not guilty by reason of insanity, it is inappropriately inflammatory for a prosecutor to speculate about the possibility that a defendant who was found not guilty by reason of insanity could be released after a short period of time.

Other courts have considered this issue and have shed light on its unique nature. *See, e.g.*, *Dunn v. State*, 277 Ala. 39, 43, 166 So. 2d 878, 882 (1964) (reversing the defendant's murder conviction after the solicitor argued that "if [the jury] sent this defendant as an insane man up to Tuscaloosa, the State mental institution, he wouldn't stay up there more than ten days"); *People v. Castro*, 5 Cal. Rptr. 906, 908-09, 182 Cal. App. 2d 255, 259-60 (1960) (evaluating the district attorney's remarks that "[i]f your verdict comes back legally [in]sane . . . just as soon as he regains his sanity, he is released" and that "he will be snubbing his nose at the Court, the jury and the Police Department," and concluding that these remarks "were patently misconduct" and constituted "a direct appeal to passion and prejudice"); *see also* *Durham v. United States*, 237 F.2d 760, 762 (D.C. Cir. 1956) ("The judge's statement that the defendant would 'be released very shortly' was highly prejudicial, for it

implied a warning that dire consequences might result from a finding that the defendant was not guilty by reason of insanity."). In *State v. Johnson*, 267 S.W.2d 642 (Mo. 1954), *cert. denied*, 351 U.S. 957 (1956), *and cert. denied*, 357 U.S. 922 (1958), the prosecutor argued in pertinent part that if the jury found the defendant not guilty by reason of insanity, "he would be out in two months." *Id.* at 645. The Missouri Supreme Court concluded that the prosecutor "was attempting to engender in the minds of the jurors the fear that if [the] defendant were acquitted on his defense of insanity, [he] would be soon discharged to rape again." *Id.* The court stated that the effect of the argument was "to incite the jury" and to urge the jury to make a decision "without reference to . . . the evidence tending to prove or disprove that [the] defendant was insane." *Id.* The court reversed the defendant's convictions. *Id.* at 646.

In *People v. Stack*, 244 Ill. App. 3d 166, 613 N.E.2d 1175, *appeal denied*, 151 Ill. 2d 574, 616 N.E.2d 345 (1993), the prosecutor stated that a finding of not guilty by reason of insanity would allow the defendant to "beat this case" and "get[ ] out the door." *Id.* at 170, 613 N.E.2d at 1178. The Illinois appellate court stated that "[t]hese types of comments could only play on an insanity jury's inherent fear that its verdict might set a dangerous man free." *Id.* at 171-72, 613 N.E.2d at 1179. The court explained that regardless of whether a prosecutor's comments suggest "an automatic release, an immediate release in the near future, or one sometime down the road,"

"[a]ll such comments have the same prejudicial effect in insanity cases, and all are not to be tolerated." *Id.* at 177, 613 N.E.2d at 1182.

In the case *sub judice* the prosecutor told the jury it was "very possible" that defendant could be released within fifty days if the jury returned such a verdict. While the prosecutor accurately also mentioned the finding that would have to be made before such a release became possible, the argument implied that such a finding was routine.

Instead, history shows that few who are acquitted of murder or another serious crime on the grounds of insanity are released shortly after their acquittal. One need look no further than the case of John Hinkley, Jr., who was acquitted in 1982 on the basis of insanity of shooting President Ronald Reagan and three others, but was not released from institutional psychiatric care until 2016. Gardiner Harris, *John Hinckley, Who Tried to Kill Reagan, Will Be Released*, N.Y. Times (July 27, 2016), http://www.nytimes.com/2016/07/28/us/hinckley-who-tried-to-kill-reagan-to-be-released.html. Closer to home, Michael Hayes was not released completely until 2012 following his 1989 acquittal on the basis of insanity of four murders in Forsyth County. Michael Hewlett, *For first time in 20 years, Michael Hayes is free of court supervision*, Winston-Salem J. (Mar. 1, 2012) http://www.journalnow.com/news/local/for-first-time-in-years-michael-hayes-is-free-of/article_d5514c21-a980-5bf3-934e-53b3e76e8c05.html.

A prosecutor may aptly oppose a verdict of not guilty by reason of insanity, but the argument should neither distort the process that follows such a verdict nor pander to the emotions of the jurors. The suggestion here that defendant could "very well" soon walk scot-free was inaccurate, misleading, and prejudicial. Accordingly, I join in the majority's conclusion that the prosecutor's argument in this case was improper.

Justices EDMUNDS and ERVIN join in this concurring opinion.

Chief Justice MARTIN dissenting.

Defendant entered her neighbors' home early one morning and repeatedly stabbed one person, who lived, and another person, who died. At trial, a jury rejected defendant's insanity defense and convicted her of first-degree murder and other offenses. The majority grants defendant a new trial because it misreads a statement by the prosecutor that actually had no prejudicial effect. And the concurring opinion adds to the confusion by injecting a legal concept (preventing prosecutors from leading the jury away from the evidence and appealing to its passions) that has little or no bearing on this case.

When the prosecutor made the statement at issue here during his closing

argument, he was discussing what could happen if the jury found defendant not guilty by reason of insanity. The prosecutor said: "And it is very possible that in 50 days, if she shows by a preponderance of the evidence that she is not a threat to anyone else or herself, she will be back home. . . . She very well could be back home in less than two months."[5] This statement was nearly correct, but it did slightly misstate the law. When a defendant who has allegedly inflicted or attempted to inflict serious physical injury or death is found not guilty by reason of insanity, state law requires that she be committed to civil confinement, *see* N.C.G.S. § 15A-1321(b) (2015), and that, once committed, the now-respondent will have a hearing within fifty days, *id.* § 122C-268.1(a) (2015). At this hearing, if the respondent proves by a preponderance of the evidence that (1) she "no longer has a mental illness" or (2) she "is no longer dangerous to others," the court "shall order the respondent discharged and released." *Id.* § 122C-268.1(i) (2015). So one way for a respondent to be released from civil confinement is to show that she is no longer dangerous to others. Had the prosecutor merely said that, it would have been a correct statement of law. But the addition of the words "or herself" made his statement incorrect. A respondent in a civil commitment hearing does not have to prove that she is not dangerous to herself—only that she is not

---

[5] As can be seen in the majority's quotation from the record, in the language omitted by the ellipsis, defense counsel made an objection that the trial court overruled. Defendant did not object to the portion of the statement that the prosecutor made after the ellipsis. Both defendant and the majority maintain that the objection should carry over to that portion for the purposes of the standard of review. I am inclined to agree, but it follows that the statement needs to be reviewed as a whole.

dangerous to others.  Because "[i]ncorrect statements of law in closing arguments are improper," *State v. Ratliff*, 341 N.C. 610, 616, 461 S.E.2d 325, 328 (1995), the prosecutor's statement was improper.

The trial court's decision not to sustain defendant's objection to this statement, however, is reversible only if the statement was prejudicial.  *See id.* at 616-18, 461 S.E.2d at 328-29.  Prejudice exists when a statement creates "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . .  The burden of showing such prejudice . . . is upon the defendant."  *Id.* at 617, 461 S.E.2d at 329 (alterations in original) (quoting N.C.G.S. § 15A-1443(a) (1988), which has not been amended since then).  The statement that the prosecutor made here was not prejudicial at all, for two reasons.

First, the prosecutor's statement was nearly accurate, and to the extent that it was inaccurate, the inaccuracy cut against the very argument that the prosecutor was making.  The prosecutor was trying to argue that defendant could be free within fifty days after being acquitted by reason of insanity, if she proved by a preponderance of the evidence that she was no longer dangerous to others (which, by law, is true).  The prosecutor's only error was to add an extra hurdle for defendant to prove, which made it sound to the jury like she had to prove more than she really did.  Because this error could only have hurt the prosecutor's argument, there is not a reasonable possibility that, in the error's absence, the trial would have resulted in something other than a guilty verdict.

Second, we have repeatedly held, "as a general rule, [that] a trial court cures any prejudice resulting from a prosecutor's misstatements of law by giving a proper instruction" about that area of the law "to the jury." *State v. Goss*, 361 N.C. 610, 626, 651 S.E.2d 867, 877 (2007) (citing *State v. Trull*, 349 N.C. 428, 452, 509 S.E.2d 178, 194 (1998), *cert. denied*, 528 U.S. 835 (1999)), *cert. denied*, 555 U.S. 835 (2008); *see also, e.g.*, *State v. Buckner*, 342 N.C. 198, 238, 464 S.E.2d 414, 437 (1995); *State v. Harris*, 290 N.C. 681, 695-96, 228 S.E.2d 437, 445 (1976). In this case, the trial court followed the pattern jury instruction and instructed the jury as follows:

> The defendant found not guilty by reason of insanity shall immediately be committed to a State mental facility. After the defendant has been automatically committed, the defendant shall be provided a hearing within 50 days. At this hearing the defendant shall have the burden of proving by a preponderance of the evidence that the defendant no longer has a mental illness or is no longer dangerous to others. If the [hearing] court is so satisfied, it shall order the defendant discharged and released.

Thus, the trial court correctly instructed the jury about what defendant would have to prove at her civil commitment hearing if the jury found her not guilty by reason of insanity. So even if the prosecutor's minor misstatement of law about what defendant would have had to show at her hearing had been at all harmful to her (which, as I have shown, it was not), it would have been cured by the trial court's proper jury instruction.

Based on these two reasons, this Court should reverse the decision of the Court

of Appeals and remand this case to the Court of Appeals for further proceedings. But by misreading the prosecutor's statement, the majority is effectively analyzing the facts of a case that does not exist.

First of all, when framing the issue in this case, the majority refers to "the prosecutor's closing arguments exaggerating a defendant's likelihood of being released from civil confinement" after being acquitted by reason of insanity. Later in its opinion, it refers to "[t]he prosecutor's arguments exaggerating the likelihood of defendant's release if found not guilty by reason of insanity." The majority thus seems to interpret the phrase "very possible" to mean something like "probable" or "likely." But this misunderstands what the phrase means. Black's Law Dictionary defines "possibility" as "[t]he quality, state, or condition of being conceivable in theory or in practice." *Possibility*, *Black's Law Dictionary* (10th ed. 2014). And the word "very" is simply a word of emphasis; when combined with "possible," it is essentially a synonym of "actually," as in "actually possible" or "very well could be."[6] Nowhere does the prosecutor say that anything is "probable" or "likely."[7]

That gets to an even more basic problem with the majority's reading of the

---

[6] Indeed, the prosecutor followed up his "very possible" statement with the statement that defendant "very well could be back home in less than two months" if she could prove her case.

[7] The concurring opinion claims that the prosecutor's statement "implied that . . . a finding [resulting in release from civil confinement in 50 days] was routine." But I see no basis for this inference, and the concurrence does not provide any.

prosecutor's statement: it incorrectly identifies what the prosecutor said was "very possible." The majority paraphrases the prosecutor as saying that, "if defendant was found not guilty by reason of insanity, it is 'very possible' that defendant *would be* released in fifty days," and that "it is 'very possible' that defendant *will be able* to show by a preponderance of the evidence in fifty days that she is no longer dangerous to others." (Emphases added.) But as it is plain to see, the prosecutor actually said nothing about the likelihood that defendant would win her hearing. He merely said that she would win her hearing *if she proved her case.* And except in the one particular that I have already discussed, the statement of law that followed the words "very possible that" was not only possible, but certain.[8] To the extent that this statement was improper, it was because the prosecutor got the law wrong, not because he said anything at all about the likelihood of defendant's release.

Given the certainty of the statute ("shall order the respondent . . . released," N.C.G.S. § 122C-268.1(i)), one might wonder why the prosecutor would have limited his statement of law with the words "very possible." On the record before us, the most likely reason for his use of those words is that he was responding to the trial judge's

---

[8] The concurring opinion says that "it is inappropriately inflammatory for a prosecutor to speculate about the possibility that a defendant who was found not guilty by reason of insanity could be released after a short period of time." Of course, if what the prosecutor said was an inflammatory "appeal[ ] to [the] jury's passions," *State v. Jones*, 355 N.C. 117, 129, 558 S.E.2d 97, 105 (2002), then the pattern jury instruction about insanity verdicts, and indeed the law itself in this area, is inflammatory as well.

instruction at the charge conference. During that conference, when the prosecutor asked whether he could comment on the commitment procedures that follow a verdict of not guilty by reason of insanity,[9] the trial judge said, "Okay." But he then instructed the prosecutor, "Just be careful what you say is all I'm saying. Be cautious about it." By hedging his statement with the words "very possible," the prosecutor appears to have been trying to heed what the trial judge said.

Once one recognizes where the majority has gone wrong, it becomes clear why the majority mistakenly asks whether the prosecution's (slightly inaccurate) statement of law is a reasonable inference from the evidence presented at trial— namely, because the majority has misunderstood what the prosecutor said. The prosecutor's statement did not draw *any* inference from the evidence; setting aside the words "or herself," the prosecutor made a statement of law that could be made about any defendant found not guilty by reason of insanity.

Proceeding from the premise that the prosecutor said something he did not say, the majority comments that "the only reasonable inference to be drawn from the evidence presented at trial is that it is *highly unlikely* that defendant would be able

---

[9] Under this Court's holding in *State v. Hammonds*, when a defendant requests an instruction on the commitment procedure and proceedings that follow a verdict of not guilty by reason of insanity, and has presented evidence to support that verdict, the trial court must provide the appropriate instruction. 290 N.C. 1, 15, 224 S.E.2d 595, 604 (1976). Defendant did so here, and the trial court complied with *Hammonds* by agreeing to issue and then properly issuing the instruction.

to demonstrate by a preponderance of the evidence within fifty days that she is no longer dangerous to others." Even this conclusion is likely mistaken. There are arguably no reasonable inferences that could be drawn from the evidence produced at trial about the results of defendant's future civil commitment hearing. The body of evidence produced at the two proceedings may not be—indeed, likely will not be— very similar. For instance, the majority discusses the testimony of Dr. Corvin, one of defendant's experts. But defendant would not have to tender Dr. Corvin as an expert in a future hearing. She could retain a new expert to evaluate her condition, who might reach different conclusions from Dr. Corvin. In fact, because defendant's goal at her civil commitment hearing would be to show that she was *not* insane, or at least that she was no longer dangerous to others in spite of her insanity, she would likely seek to offer different evidence at her hearing than she did at her trial. To be sure, it is concerning when either a defendant or the State engages in speculation as to the outcome of a future hearing, as the majority (incorrectly) accuses the State of doing in this case—and I fear that *Hammonds* instructions may invite this behavior.

The concurring opinion, meanwhile, does not accuse the prosecutor of speculation. Under its logic, though, a defendant can request and receive a *Hammonds* instruction, but the prosecutor cannot discuss that instruction in his closing statement. That ruling would prohibit the prosecutor from arguing the whole case—the law as well as the facts—even though he is legally entitled to do so. *See* N.C.G.S. § 7A-97 (2015) ("In jury trials the whole case as well of law as of fact may

be argued to the jury."). Ironically, the concurrence does not seem to be concerned when the *defense* counsel argues the whole case, including the *Hammonds* instruction, which defense counsel did here. What is good for the goose should be good for the gander.

Finally, the majority wrongly invokes the Court of Appeals' decision in *State v. Millsaps*, 169 N.C. App. 340, 610 S.E.2d 437 (2005), to support its argument. The prosecutor's statement during his closing argument in *Millsaps* could hardly be more different from the prosecutor's statement here. In *Millsaps*, the prosecutor said that "it's 99 percent certain that [a] [j]udge someday can and will say that, oh that conviction was six or eight or ten years ago, that's irrelevant, release him." *Id.* at 345, 610 S.E.2d at 441. That statement forecast a very high likelihood of release as the result of a hearing many years in the future. Here, by contrast, the prosecutor did not predict defendant's likelihood of release at all. Saying that it is very *possible* a defendant will be released *if she proves her case* is not comparable to saying that it is nearly *certain* a defendant will be released in six to ten years without any conditions attached. One statement is a comment on what the law purportedly requires; the other is a prediction about the outcome of a future proceeding.

Both the majority opinion and the concurring opinion have inadvertently distorted this case. The majority has created imaginary facts, while the concurrence has reimagined the law. In reality, the statement that defendant challenges was not prejudicial. I respectfully dissent.

*MARTIN, C.J., dissenting*

Justice NEWBY joins in this dissenting opinion.